EXHIBIT D

As filed with the Securities and Exchange Commission on November 22, 2022

Registration No. 333-268234

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

## Amendment No. 1

### to

## FORM S-4
## REGISTRATION STATEMENT
### *UNDER*
### *THE SECURITIES ACT OF 1933*

---

# Orthofix Medical Inc.
**(Exact name of registrant as specified in its charter)**

---

| | | |
|---|---|---|
| **Delaware** | **3841** | **98-1340767** |
| **(State or other jurisdiction of incorporation or organization)** | **(Primary Standard Industrial Classification Code Number)** | **(I.R.S. Employer Identification Number)** |

**3451 Plano Parkway**
**Lewisville, Texas 75056**
**(214) 937-2000**
**(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)**

---

**Kimberley A. Elting**
**Chief Legal and Development Officer and President, Global Orthopedics**
**3451 Plano Parkway**
**Lewisville, Texas 75056**
**(214) 937-2000**
**(Name, address, including zip code, and telephone number, including area code, of agent for service)**

---

**Copies of all communications, including communications sent to agent for service, should be sent to:**

| | | |
|---|---|---|
| **Joseph E. Gilligan** | **Patrick L. Keran** | **Michael S. Kagnoff** |
| **Brian C. O'Fahey** | **Senior Vice President, General Counsel and Secretary** | **David M. Clark** |
| **Hogan Lovells US LLP** | **SeaSpine Holdings Corporation** | **Patrick J. O'Malley** |
| **Columbia Square** | **5770 Armada Drive** | **DLA Piper LLP (US)** |
| **555 Thirteenth Street, NW** | **Carlsbad, CA 92008** | **4365 Executive Drive, Suite 1100** |
| **Washington, DC 20004** | **(760) 727-8399** | **San Diego, CA 92121** |
| **(202) 637-5600** | | **(858) 677-1400** |

---

Approximate date of commencement of proposed sale to the public: As soon as practicable after this Registration Statement becomes effective and all other conditions to the proposed merger described in the enclosed joint proxy statement/prospectus have been satisfied or waived.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 7(a)(2)(B) of the Securities Act.  ☐

If applicable, place an X in the box to designate the appropriate rule provision relied upon in conducting this transaction:

Exchange Act Rule 13e-4(i) (Cross-Border Issuer Tender Offer)  ☐

Exchange Act Rule 14d-1(d) (Cross-Border Third-Party Tender Offer)  ☐

---

**The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

**Table of Contents**

**The information in this joint proxy statement/prospectus is not complete and may be changed. We may not sell the securities offered by this joint proxy statement/prospectus until the registration statement filed with the Securities and Exchange Commission is effective. This joint proxy statement/prospectus does not constitute an offer to sell or a solicitation of an offer to buy any securities in any jurisdiction where an offer, solicitation or sale is not permitted.**

**PRELIMINARY — SUBJECT TO COMPLETION, DATED NOVEMBER 22, 2022**

 

### TRANSACTION PROPOSED — YOUR VOTE IS VERY IMPORTANT

Dear Stockholders:

On October 10, 2022, Orthofix Medical Inc., or Orthofix, Orca Merger Sub Inc., a wholly owned subsidiary of Orthofix, or Merger Sub, and SeaSpine Holdings Corporation, or SeaSpine, entered into an Agreement and Plan of Merger, or the merger agreement, pursuant to which, subject to approval of Orthofix stockholders and SeaSpine stockholders and the satisfaction or (to the extent permitted by law) waiver of other specified closing conditions, the Orthofix and SeaSpine businesses will combine in an all-stock merger of equals. At the effective time of the merger, Merger Sub will merge with and into SeaSpine, with SeaSpine surviving the merger and becoming a wholly owned subsidiary of Orthofix. Each of the common stock of Orthofix and the common stock of SeaSpine is traded on the Nasdaq Global Select Market under the symbols "OFIX" and "SPNE," respectively. The parties expect to rename Orthofix (as the parent entity in the combined company structure) prior to the transaction's closing. Orthofix intends to file an initial listing application for the combined company with the Nasdaq Global Select Market, which will reflect any revision to the combined company's trading symbol.

If the merger is completed, at the effective time of the merger, each share of SeaSpine common stock (other than shares held by SeaSpine as treasury stock) will be converted into the right to receive 0.4163 fully paid and nonassessable shares of Orthofix common stock (and, if applicable, cash in lieu of fractional shares), or the merger consideration, less any applicable withholding taxes. Also at the effective time of the merger, outstanding restricted stock units to acquire shares of SeaSpine common stock will be assumed by Orthofix and converted into restricted stock units to acquire shares of Orthofix common stock, and outstanding options to purchase shares of SeaSpine common stock will be assumed by Orthofix and converted into options to purchase shares of Orthofix common stock, in each case with necessary adjustments to reflect the exchange ratio. For more details on the merger consideration, see "The Merger Agreement — Merger Consideration."

The market value of Orthofix common stock at the time of completion of the merger could be greater than, less than or the same as the market value of Orthofix common stock on the date of the accompanying joint proxy statement/prospectus.

Each share of Orthofix common stock, each option to purchase shares of Orthofix common stock and each Orthofix restricted stock unit, performance stock unit and deferred stock unit that is outstanding at the effective time of the merger will remain outstanding in accordance with its terms and such shares of common stock, options, restricted stock units, performance stock units and deferred stock units will be unaffected by the merger (except for certain performance achievement and post-separation acceleration and extended exercise rights that will exist following completion of the merger, as further described beginning on page 139 in "Interests of Orthofix's Directors and Executive Officers in the Merger"). Based on the number of shares of SeaSpine common stock outstanding and reserved for issuance, Orthofix expects to issue an aggregate of approximately 16.6 million shares of Orthofix common stock to holders of SeaSpine common stock in the merger. This estimate is based on the number of outstanding shares of SeaSpine common stock as of October 7, 2022, including share equity awards and exchangeable shares but excluding outstanding options (as such options are not currently expected to be exercised prior to closing given the applicable exercise prices). Based on the current number of shares of SeaSpine common stock outstanding and reserved for issuance, and the current number of shares of Orthofix common stock outstanding and reserved for issuance, we estimate that, immediately following completion of the merger, former holders of SeaSpine common stock will own approximately 43.5%, and pre-merger holders of Orthofix common stock will own approximately 56.5%, of the outstanding common stock on a diluted basis (calculated using the treasury stock method).

Table of Contents

Each of Orthofix and SeaSpine is holding a special meeting of its stockholders to vote on the proposals necessary to complete the merger. Information about each meeting, the merger and the other business to be considered by stockholders at each special meeting is contained in this joint proxy statement/prospectus. Any stockholder entitled to attend and vote at the applicable special meeting is entitled to appoint a proxy to attend and vote on such stockholder's behalf. Such proxy need not be a holder of Orthofix common stock or SeaSpine common stock. We urge you to read this joint proxy statement/prospectus and the annexes and documents incorporated by reference carefully. **You should also carefully consider the risks that are described in the "Risk Factors" section beginning on page 33.**

**Your vote is very important regardless of the number of shares of Orthofix common stock or SeaSpine common stock that you own.** The merger cannot be completed without (1) the adoption of the merger agreement by the affirmative vote of holders of a majority of the shares of SeaSpine common stock outstanding as of the SeaSpine record date and entitled to vote on the proposal and (2) the approval of the issuance of Orthofix common stock to SeaSpine stockholders in connection with the merger by the affirmative vote of a majority in voting power of the shares of Orthofix common stock present in person or represented by proxy at the Orthofix special meeting and entitled to vote on the proposal.

Whether or not you plan to attend the Orthofix special meeting or the SeaSpine special meeting, please submit your proxy as soon as possible to make sure that your shares are represented at the applicable meeting.

On behalf of the boards of directors of Orthofix and SeaSpine, thank you for your consideration and continued support.

| | |
|---|---|
| Jon C. Serbousek | Keith C. Valentine |
| President, Chief Executive Officer and Director | President, Chief Executive Officer and Director |
| Orthofix Medical Inc. | SeaSpine Holdings Corporation |

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the merger or the other transactions described in this joint proxy statement/prospectus or the securities to be issued in connection with the merger or determined if this joint proxy statement/prospectus is accurate or complete. Any representation to the contrary is a criminal offense.**

The accompanying joint proxy statement/prospectus is dated [    ], 2022 and is first being mailed to stockholders of Orthofix and stockholders of SeaSpine on or about [    ], 2022.

Table of Contents



**ORTHOFIX MEDICAL INC.**
**3451 Plano Parkway**
**Lewisville, Texas 75056**

**NOTICE OF SPECIAL MEETING OF STOCKHOLDERS**
**To be held on January 4, 2023**

To the Stockholders of Orthofix Medical Inc.:

We are pleased to invite you to attend — and notice is hereby given that Orthofix Medical Inc., referred to as Orthofix, will hold — a special meeting of its stockholders, referred to as the Orthofix special meeting, at Hampton Inn & Suites, 3650 Plano Pkwy, The Colony, TX 75056 on January 4, 2023, at 11 a.m. Central Time for the following purposes:

1. **Approval of the Orthofix Share Issuance.** To vote on a proposal to approve the issuance of Orthofix common stock, par value $0.10 per share, to SeaSpine stockholders in connection with the merger, as contemplated by the Agreement and Plan of Merger, referred to as the merger agreement, dated as of October 10, 2022, by and among Orthofix Medical Inc., Orca Merger Sub Inc. and SeaSpine Holdings Corporation, referred to as the Orthofix share issuance proposal; and

2. **Adjournment of the Orthofix Special Meeting.** To vote on a proposal to approve the adjournment of the Orthofix special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies in the event there are not sufficient votes at the time of the Orthofix special meeting to approve the Orthofix share issuance proposal, referred to as the Orthofix adjournment proposal.

Orthofix will transact no other business at the Orthofix special meeting, except such business as may properly be brought before the Orthofix special meeting or any adjournment or postponement thereof. Please refer to the joint proxy statement/prospectus of which this notice is a part for further information with respect to the business to be transacted at the Orthofix special meeting.

The Orthofix board of directors, referred to as the Orthofix Board, has fixed the close of business on November 10, 2022 as the record date for the Orthofix special meeting, referred to as the Orthofix record date. Only Orthofix stockholders of record at that time are entitled to receive notice of, and to vote at, the Orthofix special meeting or any adjournment or postponement thereof. Orthofix is commencing its solicitation of proxies on or about [ ], 2022. Orthofix will continue to solicit proxies until the date of the Orthofix special meeting.

Completion of the merger is conditioned upon, among other things, approval of the Orthofix share issuance proposal by the Orthofix stockholders, which requires the affirmative vote of a majority in voting power of the shares of Orthofix common stock present in person or represented by proxy at the Orthofix special meeting and entitled to vote on the proposal.

**The Orthofix Board has unanimously (a) approved and declared advisable the merger agreement and the transactions contemplated by the merger agreement, including the issuance of shares of Orthofix common stock in the merger, on the terms and subject to the conditions set forth in the merger agreement, (b) determined that the merger agreement and the transactions contemplated by the merger agreement, including the merger and the issuance of Orthofix common shares in the merger, are fair to, and in the best interests of, Orthofix and its stockholders, (c) resolved to recommend the approval of the Orthofix share issuance proposal to the Orthofix stockholders, on the terms and subject to the conditions set forth in the merger agreement, and (d) directed that the Orthofix share issuance proposal be submitted to Orthofix stockholders for approval. The Orthofix Board unanimously recommends that Orthofix stockholders vote:**

• **"FOR" the Orthofix share issuance proposal; and**

**Table of Contents**

• **"FOR" the Orthofix adjournment proposal.**

**Your vote is very important regardless of the number of shares of Orthofix common stock that you own. The votes cast in favor of the Orthofix share issuance proposal must exceed the aggregate of votes cast against the Orthofix share issuance proposal and abstentions. Whether or not you expect to attend the Orthofix special meeting in person, to ensure your representation at the Orthofix special meeting, we urge you to submit a proxy to vote your shares as promptly as possible by (1) visiting the Internet site listed on the Orthofix proxy card, (2) calling the toll-free number listed on the Orthofix proxy card or (3) submitting your Orthofix proxy card by mail by using the provided self-addressed, stamped envelope**. Submitting a proxy will not prevent you from voting in person, but it will help to secure a quorum and avoid added solicitation costs. Any eligible holder of Orthofix common stock who is present at the Orthofix special meeting may vote in person, thereby revoking any previous proxy. In addition, a proxy may also be revoked in writing before the Orthofix special meeting in the manner described in the accompanying joint proxy statement/prospectus. If your shares are held in the name of a bank, broker or other nominee, please follow the instructions on the voting instruction card furnished by the bank, broker or other nominee.

You will need to obtain an admission ticket in advance to attend the Orthofix special meeting. To do so, please make your request by mail to Orthofix Investor Relations, 3451 Plano Parkway, Lewisville, Texas 75056, or by email at MergerInfo@Orthofix.com. Orthofix Investor Relations must receive your request for an admission ticket on or before 11:59 p.m. Central Time on January 2, 2023. Seating will be limited and requests for tickets will be processed in the order in which they are received.

If you own shares in "street name" through an account with a bank, broker or other nominee, then send proof of your Orthofix share ownership as of the Orthofix record date (for example, a brokerage firm account statement or a "legal proxy" from your intermediary) along with your ticket request. If you are not sure what proof to send, check with your intermediary.

If your shares are registered in your name with Orthofix's stock registrar and transfer agent, Computershare Trust Company, N.A., no proof of ownership is required because Orthofix can verify your ownership.

For security reasons, be prepared to show a form of government-issued photo identification when presenting your ticket for admission to the Orthofix special meeting. If you forget to bring your ticket, you will be admitted only if you provide photo identification. If you do not request a ticket in advance, you will be admitted only if space is available and you provide photo identification and satisfactory evidence that you were a stockholder of Orthofix common stock as of the Orthofix record date. If you need special assistance at the Orthofix special meeting because of a disability, please contact Orthofix Investor Relations.

The enclosed joint proxy statement/prospectus provides a detailed description of the merger and the merger agreement and the other matters to be considered at the Orthofix special meeting. We urge you to carefully read this joint proxy statement/prospectus, including any documents incorporated by reference herein, and the annexes in their entirety. If you have any questions concerning either of the proposals in this notice, the merger or the joint proxy statement/prospectus, would like additional copies or need help voting your shares of Orthofix common stock, please contact Orthofix's proxy solicitor:

Saratoga Proxy Consulting LLC
520 8th Avenue, 14th Floor
New York, New York 10018
(212) 257-1311
(888) 368-0379

By Order of the Orthofix Medical Inc. Board of Directors,

Kimberley A. Elting
*Chief Legal and Development Officer and President, Global Orthopedics*
Lewisville, Texas
    [    ], 2022

Table of Contents



**SEASPINE HOLDINGS CORPORATION**
**5770 Armada Drive**
**Carlsbad, California 92008**

**NOTICE OF SPECIAL MEETING OF STOCKHOLDERS**
**To be held on January 4, 2023**

To the Stockholders of SeaSpine Holdings Corporation:

We are pleased to invite you to attend — and notice is hereby given that SeaSpine Holdings Corporation, referred to as SeaSpine, will hold — a special meeting of its stockholders, referred to as the SeaSpine special meeting, at the offices of DLA Piper LLP (US), 4365 Executive Drive, 4th Floor, San Diego, CA 92121 on January 4, 2023 at 9 a.m. Pacific Time for the following purposes:

1. **Adoption of the Merger Agreement.** To vote on a proposal to adopt the Agreement and Plan of Merger, dated as of October 10, 2022, by and among Orthofix Medical Inc., Orca Merger Sub Inc. and SeaSpine Holdings Corporation, referred to as the merger agreement, which is further described in the section entitled "The Merger Agreement," a copy of which merger agreement is attached as Annex A to the joint proxy statement/prospectus accompanying this notice, referred to as the SeaSpine merger proposal;

2. **SeaSpine Merger-Related Compensation.** To vote on a proposal to approve, by advisory (non-binding) vote, certain compensation arrangements that may be paid or become payable to SeaSpine's named executive officers in connection with the merger contemplated by the merger agreement, referred to as the SeaSpine merger-related compensation proposal; and

3. **Adjournment of the SeaSpine Special Meeting.** To vote on a proposal to approve the adjournment of the SeaSpine special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies in the event there are not sufficient votes at the time of the SeaSpine special meeting to approve the SeaSpine merger proposal, referred to as the SeaSpine adjournment proposal.

SeaSpine will transact no other business at the SeaSpine special meeting, except such business as may properly be brought before the SeaSpine special meeting or any adjournment or postponement thereof. Please refer to the joint proxy statement/prospectus of which this notice is a part for further information with respect to the business to be transacted at the SeaSpine special meeting.

The SeaSpine board of directors, referred to as the SeaSpine Board, has fixed the close of business on November 10, 2022 as the record date for the SeaSpine special meeting, referred to as the SeaSpine record date. Only SeaSpine stockholders of record at that time are entitled to receive notice of, and to vote at, the SeaSpine special meeting or any adjournment or postponement thereof. SeaSpine is commencing its solicitation of proxies on or about [ ], 2022. SeaSpine will continue to solicit proxies until the date of the SeaSpine special meeting.

Completion of the merger is conditioned, among other things, upon adoption of the merger agreement by the SeaSpine stockholders, which requires the affirmative vote of holders of a majority of the shares of SeaSpine common stock outstanding as of the SeaSpine record date and entitled to vote on the proposal.

**The SeaSpine Board has unanimously approved and declared advisable the merger agreement and the transactions contemplated by the merger agreement, including the merger; determined that the merger agreement and the transactions contemplated by the merger agreement, including the merger, are advisable, fair to and in the best interests of SeaSpine and its stockholders; and unanimously recommends that SeaSpine stockholders vote:**

•  **"FOR" the SeaSpine merger proposal;**

•  **"FOR" the SeaSpine merger-related compensation proposal; and**

•  **"FOR" the SeaSpine adjournment proposal.**

[Table of Contents](#)

**Your vote is very important regardless of the number of shares of common stock that you own. A failure to vote your shares, or to provide instructions to your bank, broker or nominee as to how to vote your shares, is the equivalent of a vote against the SeaSpine merger proposal. Whether or not you expect to attend the SeaSpine special meeting in person, to ensure your representation at the SeaSpine special meeting, we urge you to submit a proxy to vote your shares as promptly as possible by (1) visiting the Internet site listed on the SeaSpine proxy card, (2) calling the toll-free number listed on the SeaSpine proxy card or (3) submitting your SeaSpine proxy card by mail by using the provided self-addressed, stamped envelope.** Submitting a proxy will not prevent you from voting in person, but it will help to secure a quorum and avoid added solicitation costs. Any eligible holder of SeaSpine common stock who is present at the SeaSpine special meeting may vote in person, thereby revoking any previous proxy. In addition, a proxy may also be revoked in writing before the SeaSpine special meeting in the manner described in the accompanying joint proxy statement/prospectus. If your shares are held in the name of a bank, broker or other nominee, please follow the instructions on the voting instruction card furnished by the bank, broker or other nominee.

If you are a stockholder of record as of the SeaSpine record date for the SeaSpine special meeting and you plan to attend the SeaSpine special meeting in person, you will need valid government-issued photo identification to enter the SeaSpine special meeting. If you hold your shares through a bank, broker or other nominee and you plan to attend the SeaSpine special meeting in person, we will admit you only if we can verify that you are a SeaSpine stockholder as of the SeaSpine record date. You will need to bring a letter or account statement demonstrating that you were the beneficial owner of our common stock on the SeaSpine record date, along with valid government-issued photo identification, to be admitted to the SeaSpine special meeting.

If you hold SeaSpine common stock in your name on the SeaSpine record date and plan to attend the SeaSpine special meeting, because of security procedures, you will need to obtain an admission ticket in advance. In addition to obtaining an admission ticket in advance, you will be required to provide valid government-issued photo identification to be admitted to the SeaSpine special meeting. Admission tickets will be available to both registered and beneficial owners of SeaSpine common stock. You may apply for an admission ticket by mail to Office of the Corporate Secretary, 5770 Armada Drive, Carlsbad, California 92008. SeaSpine's Corporate Secretary must receive your request for an admission ticket on or before 11:59 p.m. Eastern Time on January 2, 2023. If you are a beneficial owner of SeaSpine common stock and hold your shares through a bank, broker or other nominee and you plan to attend the SeaSpine special meeting in person, in addition to following the procedures described above, you will also need to provide proof of beneficial ownership at the SeaSpine record date to obtain your admission ticket for the SeaSpine special meeting. A brokerage statement or account letter from a bank or broker are examples of proof of beneficial ownership. If you wish to vote your SeaSpine common stock held in "street name" in person at the SeaSpine special meeting, you will have to obtain a written legal proxy in your name from the bank, broker or other nominee holder of record that holds your shares. Please note that seating will be limited and requests for admission tickets will be accepted on a first-come, first-served basis. If you need special assistance at the SeaSpine special meeting because of a disability, please contact SeaSpine's Corporate Secretary's Office.

The enclosed joint proxy statement/prospectus provides a detailed description of the merger and the merger agreement and the other matters to be considered at the SeaSpine special meeting. We urge you to carefully read this joint proxy statement/prospectus, including any documents incorporated by reference herein, and the annexes in their entirety. If you have any questions concerning any of the proposals in this notice, the merger or the joint proxy statement/prospectus, would like additional copies or need help voting your shares of common stock, please contact SeaSpine's proxy solicitor or SeaSpine:



**Strategic Shareholder Advisor and Proxy Solicitation Agent**
745 Fifth Avenue, 5th Floor, New York, NY 10151
North American Toll Free Phone:
**(855) 476-7861**
Email: contactus@kingsdaleadvisors.com
Call Collect Outside North America: (917) 813-1235

**Table of Contents**

OR

**SeaSpine Holdings Corporation**
5770 Armada Drive
Carlsbad, California 92008
Attention: Investor Relations
Telephone: (610) 368-6505
E-mail: ir@seaspine.com

By Order of the SeaSpine Holdings Corporation Board of Directors,

Patrick L. Keran
*Senior Vice President,*
*General Counsel and Secretary*

Carlsbad, California
    [    ], 2022

Table of Contents

### ABOUT THIS JOINT PROXY STATEMENT/PROSPECTUS

This joint proxy statement/prospectus, which forms part of a registration statement on Form S-4 filed with the SEC by Orthofix (File No. 333-268234), constitutes a prospectus of Orthofix under Section 5 of the Securities Act of 1933, as amended, with respect to the shares of common stock, par value $0.10 per share, of Orthofix to be issued to SeaSpine stockholders pursuant to the merger agreement. This document also constitutes a joint proxy statement of each of Orthofix and of SeaSpine under Section 14(a) of the Securities Exchange Act of 1934. It also constitutes a notice of meeting with respect to the SeaSpine special meeting, at which SeaSpine stockholders will be asked to consider and vote upon the SeaSpine merger proposal and certain other proposals, and it constitutes a notice of meeting with respect to the Orthofix special meeting, at which Orthofix stockholders will be asked to consider and vote upon the Orthofix share issuance proposal and certain other proposals.

You should rely only on the information contained in or incorporated by reference into this joint proxy statement/prospectus. Orthofix and SeaSpine have not authorized anyone to provide you with information that is different from that contained in or incorporated by reference into this joint proxy statement/prospectus. This joint proxy statement/prospectus is dated as of the date set forth above on the cover page of this joint proxy statement/prospectus, and you should not assume that the information contained in this joint proxy statement/prospectus is accurate as of any date other than such date. Further, you should not assume that the information incorporated by reference into this joint proxy statement/prospectus is accurate as of any date other than the date of the incorporated document. Neither the mailing of this joint proxy statement/prospectus to Orthofix stockholders or SeaSpine stockholders nor the issuance by Orthofix of shares of Orthofix common stock pursuant to the merger agreement will create any implication to the contrary.

**This joint proxy statement/prospectus does not constitute an offer to sell, or a solicitation of an offer to buy, any securities, or the solicitation of a proxy, in any jurisdiction in which or from any person to whom it is unlawful to make any such offer or solicitation in such jurisdiction. Information contained in this joint proxy statement/prospectus regarding Orthofix and Orca Merger Sub Inc. has been provided by Orthofix and information contained in this joint proxy statement/prospectus regarding SeaSpine has been provided by SeaSpine.**

Unless otherwise indicated or as the context otherwise requires, all references in this joint proxy statement/prospectus to:

- "Code" refers to the Internal Revenue Code of 1986, as amended

- "combined company" refers to Orthofix, following completion of the merger

- "DGCL" refers to the General Corporation Law of the State of Delaware

- "Exchange Act" refers to the Securities Exchange Act of 1934, as amended

- "exchange ratio" refers to 0.4163 shares of Orthofix common stock per share of SeaSpine common stock

- "excluded shares" refers to shares of SeaSpine common stock held by Orthofix, Merger Sub, any direct or indirect wholly owned subsidiary of SeaSpine or Orthofix or by SeaSpine as treasury stock

- "GAAP" refers to accounting principles generally accepted in the United States

- "HSR Act" refers to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended

- "IRS" refers to the Internal Revenue Service

- "merger" refers to the merger of Merger Sub with and into SeaSpine, with SeaSpine being the surviving corporation in the merger

- "merger agreement" refers to the Agreement and Plan of Merger, dated as of October 10, 2022, by and among Orthofix, Merger Sub and SeaSpine

ii

Table of Contents

perform fusion procedures in the lumbar, thoracic and cervical spine. SeaSpine believes this broad combined portfolio is essential to meet the "complete solution" requirements of these surgeons. SeaSpine reports revenue in two product categories: (i) orthobiologics and (ii) spinal implants and enabling technologies. SeaSpine's orthobiologics products consist of a broad range of advanced and traditional bone graft substitutes designed to improve bone fusion rates following a wide range of orthopedic surgeries, including spine, hip, and extremities procedures. SeaSpine's spinal implants and enabling technologies portfolio consists of an extensive line of products and image-guided surgical solutions to facilitate spinal fusion in degenerative, minimally invasive surgery (MIS), and complex spinal deformity procedures. Expertise in orthobiologic sciences and spinal implants, software and advanced optics product development allows SeaSpine to offer surgeon customers a differentiated portfolio and a complete solution to meet their patients' fusion requirements. SeaSpine currently markets its products in the United States and in approximately 30 countries worldwide.

SeaSpine was incorporated in Delaware on February 12, 2015. Its principal executive offices are at 5770 Armada Drive, Carlsbad, California and its telephone number is (760) 727-8399. SeaSpine's website address is *www.seaspine.com*. Information contained on SeaSpine's website does not constitute part of this joint proxy statement/prospectus. SeaSpine's stock is publicly traded on Nasdaq under the ticker symbol "SPNE." Additional information about SeaSpine is included in documents incorporated by reference in this joint proxy statement/prospectus. Please see the section entitled "Where You Can Find More Information."

### *Orca Merger Sub Inc.*

Orca Merger Sub Inc., a wholly owned subsidiary of Orthofix, is a Delaware corporation incorporated on October 7, 2022, for the purpose of effecting the merger. Orca Merger Sub Inc. has not conducted any activities other than those incidental to its formation and the matters contemplated by the merger agreement. The principal executive offices of Orca Merger Sub Inc. are located at 3451 Plano Parkway, Lewisville, Texas 75056, and its telephone number is (214) 937-2000.

### The Merger Agreement (page 117)

The terms and conditions of the merger are contained in the merger agreement, a copy of which merger agreement is attached as Annex A to this joint proxy statement/prospectus. We encourage you to read the merger agreement carefully and in its entirety, as it is the legal document that governs the merger.

On October 10, 2022, Orthofix, Merger Sub and SeaSpine entered into the merger agreement, which provides that, subject to the terms and conditions of the merger agreement and in accordance with the DGCL, Merger Sub will merge with and into SeaSpine, with SeaSpine continuing as the surviving corporation and a wholly owned subsidiary of Orthofix.

### Merger Consideration (page 117)

At the effective time of the merger, upon the terms and subject to the conditions set forth in the merger agreement, each issued and outstanding share of SeaSpine common stock (other than excluded shares, which will be canceled and retired and cease to exist) will be converted into the right to receive 0.4163 fully paid and nonassessable shares of Orthofix common stock, and, if applicable, cash in lieu of fractional shares. The market value of Orthofix common stock at the time of completion of the merger could be greater than, less than or the same as the market value of Orthofix common stock on the date of this joint proxy statement/prospectus. Based on the closing price of Orthofix common stock on Nasdaq of $18.40 on October 10, 2022, the last trading day before public announcement of the merger, the merger consideration represented approximately $7.66 for each share of SeaSpine common stock. The closing price of SeaSpine common stock on the Nasdaq on October 10, 2022 was $5.57. We urge you to obtain current market quotations for the shares of common stock of Orthofix and SeaSpine.

For more details on the exchange ratio, see "The Merger Agreement — Merger Consideration."

14

Table of Contents

**SEASPINE PROPOSAL I: ADOPTION OF THE MERGER AGREEMENT AND**
**ORTHOFIX PROPOSAL I: APPROVAL OF THE SHARE ISSUANCE**

*The following is a discussion of the merger between Orthofix and SeaSpine. The description of the merger agreement in this section and elsewhere in this joint proxy statement/prospectus is qualified in its entirety by reference to the complete text of the merger agreement, a copy of which is attached as Annex A, and is incorporated by reference into this joint proxy statement/prospectus. This summary does not purport to be complete and may not contain all of the information about the merger that is important to you. You are encouraged to read the merger agreement carefully and in its entirety. This section is not intended to provide you with any factual information about Orthofix or SeaSpine. Such information can be found elsewhere in this joint proxy statement/prospectus and in the public filings Orthofix and SeaSpine make with the SEC that are incorporated by reference into this joint proxy statement/prospectus, as described in the section entitled "Where You Can Find More Information."*

**Background of the Merger**

In order to assist Orthofix management in exploring, reviewing and evaluating potential opportunities for corporate strategic planning, the Orthofix Board formed a strategic steering committee in September 2021. The primary responsibilities of the Orthofix strategic steering committee included (1) overseeing the retention of advisors to assist with the review and evaluation of the Orthofix strategic plan and (2) oversight of a process to review and evaluate potential strategic alternatives for Orthofix, including opportunities for strategic business combinations and similar strategic transactions.

The SeaSpine Board, together with members of SeaSpine management, regularly review and assess the performance, future growth prospects, business plans and overall strategic direction of SeaSpine, and consider a variety of strategic alternatives that may be available to SeaSpine, including continuing to pursue SeaSpine's strategy as a standalone company or pursuing potential strategic or financing transactions with third parties, in each case with the goal of maximizing stockholder value.

From October 2021 through February 2022, the Orthofix strategic steering committee met periodically, including with outside advisors, to review the competitive landscape and recent developments in the medical device industry and to identify, evaluate and consider potential strategic opportunities for Orthofix.

On October 28, 2021, at a meeting of the Orthofix strategic steering committee, the committee reviewed with Orthofix management proposals from two global management consulting firms to assist the committee and Orthofix management with an assessment of strategic alternatives, which proposals were solicited by Orthofix management at the direction of the strategic steering committee. A third global management consulting firm was also invited to submit a proposal but declined to do so. After this review, the committee directed Orthofix management to engage one of two global management consulting firms that had submitted proposals ("Consultant A"). The Orthofix strategic steering committee selected Consultant A due to, among other reasons, its prior experience assisting Orthofix with a previous consulting matter, its extensive experience in Orthofix's industry and its familiarity with Orthofix's business and strategic objectives.

On December 9, 2021, at a meeting of the Orthofix strategic steering committee, representatives of Consultant A provided the committee with preliminary views on the Orthofix business and an overview and timeline for their review of potential strategic alternatives.

On December 13, 2021, at a meeting of the Orthofix Board, representatives from Consultant A, at the direction of the strategic steering committee, presented to the Orthofix Board an overview and timeline for their review of potential strategic alternatives for Orthofix. The Orthofix Board directed the Consultant A team to proceed with their work as presented and to provide interim reports to the Orthofix strategic steering committee and to the Orthofix Board.

Table of Contents

## THE MERGER AGREEMENT

This section describes the material terms of the merger agreement. The descriptions of the merger agreement in this section and elsewhere in this joint proxy statement/prospectus are qualified in their entirety by reference to the complete text of the merger agreement, a copy of which merger agreement is attached as Annex A and is incorporated by reference into this joint proxy statement/prospectus. This summary does not purport to be complete and may not contain all of the information about the merger agreement that is important to you. You are encouraged to carefully read the entire merger agreement.

### Explanatory Note Regarding the Merger Agreement

The merger agreement and the summary of its terms in this joint proxy statement/prospectus have been included to provide you with information regarding the terms and conditions of the merger agreement. Neither the merger agreement nor the summary of its material terms included in this section is intended to provide any factual information about Orthofix or SeaSpine. Factual disclosures about Orthofix and SeaSpine contained in this joint proxy statement/prospectus and/or in the public reports of Orthofix and SeaSpine filed with the SEC (as described in the section entitled "Where You Can Find More Information") may supplement, update or modify the disclosures about Orthofix and SeaSpine contained in the merger agreement. The merger agreement contains representations and warranties and covenants of the parties customary for a merger of this nature. The representations and warranties contained in the merger agreement were made only for purposes of the merger agreement as of the specific dates therein; were made solely for the benefit of the parties to the merger agreement; may be subject to limitations agreed upon by the contracting parties, including being qualified by confidential disclosures made for the purposes of allocating contractual risk between the parties to the merger agreement instead of establishing these matters as facts; and may be subject to standards of materiality applicable to the contracting parties that differ from those applicable to investors. Investors are not third-party beneficiaries under the merger agreement except for the limited purposes expressly set forth therein and should not rely on the representations and warranties or any descriptions thereof as characterizations of the actual state of facts or condition of the parties thereto or any of their respective subsidiaries or affiliates. Moreover, information concerning the subject matter of representations and warranties may change after the date of the merger agreement, which subsequent information may or may not be fully reflected in Orthofix's or SeaSpine's public disclosures. Accordingly, the representations and warranties in the merger agreement should not be relied on by any persons as characterizations of the actual state of facts about Orthofix or SeaSpine at the time they were made or otherwise.

### Structure of the Merger

The merger agreement provides that, upon the terms and subject to the conditions set forth in the merger agreement, and in accordance with the DGCL, at the effective time of the merger, referred to as the effective time, Merger Sub will merge with and into SeaSpine, and the separate corporate existence of Merger Sub will cease. SeaSpine will continue as the surviving corporation and a wholly owned subsidiary of Orthofix.

At the effective time, the certificate of incorporation of SeaSpine and the bylaws of SeaSpine will be amended and restated in their entirety to be in the form of the certificate of incorporation of Merger Sub (subject to the continuing direct and officer indemnification requirements set forth in the merger agreement) and the bylaws of Merger Sub, respectively, as in effect immediately prior to the effective time (except that (1) the name of the surviving corporation will be "SeaSpine Holdings Corporation"), until amended in accordance with applicable law and such certificate of incorporation and bylaws, as applicable.

### Merger Consideration

At the effective time, by virtue of the merger and without any further action of the parties or any holder of shares thereof, each issued and outstanding share of SeaSpine common stock (other than excluded shares, which will be canceled and retired and cease to exist) will be converted into the right to receive 0.4163 fully paid and nonassessable shares of Orthofix common stock.

117

**Table of Contents**

**Annex A**

**EXECUTION VERSION**

**AGREEMENT AND PLAN OF MERGER**

**by and among**

**ORTHOFIX MEDICAL INC.,**

**ORCA MERGER SUB INC.,**

**and**

**SEASPINE HOLDINGS CORPORATION**

Dated October 10, 2022

Table of Contents

(e)    Since January 1, 2018, SeaSpine and its Subsidiaries have not, to their knowledge, been and are not now under any administrative, civil, or criminal investigation, prosecution, or indictment, and neither SeaSpine nor its Subsidiaries are party to any legal actions involving alleged false statements, false claims or other improprieties relating to their compliance with Anti-Corruption Laws.

(f)    Since January 1, 2018, SeaSpine and its Subsidiaries have maintained an adequate system or systems of internal controls reasonably designed to ensure compliance with all Anti-Corruption Laws and prevent and detect violations of Anti-Corruption Laws.

(g)    Since January 1, 2018, neither SeaSpine nor any of its Subsidiaries has made any disclosure (voluntary or otherwise) to any Governmental Body with respect to any alleged irregularity, misstatement or omission or other potential violation or liability arising under or relating to any Anti-Corruption Laws.

3.19    Environmental Compliance and Conditions. Except for matters that would not, individually or in the aggregate, reasonably be expected to have a SeaSpine Material Adverse Effect: (a) each of SeaSpine and its Subsidiaries is and has been in compliance with all Environmental Laws; (b) each of SeaSpine and its Subsidiaries holds, and is and has been in compliance with, all authorizations, licenses and Permits required under Environmental Laws to operate its business at the SeaSpine Real Property as presently conducted; (c) none of SeaSpine or any of its Subsidiaries has received any notice from any Governmental Body or third party regarding any actual or alleged violation of Environmental Laws or any Liabilities or potential Liabilities for investigation costs, cleanup costs, response costs, corrective action costs, personal injury, property damage, natural resources damages or attorneys' fees under Environmental Laws; (d) no Hazardous Substance has ever been released, generated, treated, contained, handled, used, manufactured, processed, buried, disposed of, deposited or stored by SeaSpine or on, under or about any of the real property occupied or used by SeaSpine. SeaSpine has not disposed of or released or allowed or permitted the release of any Hazardous Substance at any real property, including the SeaSpine Real Property, so as to give rise to Liability for investigation costs, cleanup costs, response costs, corrective action costs, personal injury, property damage, natural resources damages or attorney fees under CERCLA or any other Environmental Laws; and (e) to SeaSpine's knowledge, there are no and have never been any Hazardous Substances present on, at, in or under any real property currently or formerly owned, leased or used by SeaSpine for which SeaSpine has, or may have, Liability.

3.20    Employment and Labor Matters. SeaSpine has made available a true and complete listing of all current SeaSpine employees and contractors, including for each: (a) their work location; (b) date of hire; (c) annual base salary (or hourly wage rate, or other method of compensation as applicable); (d) job title or description of services; and (e) employment or engagement status (e.g., as applicable, full-time or part-time employee, contractor, non-exempt or exempt classification under the Fair Labor Standards Act or similar applicable Laws). SeaSpine is not a party to or bound by any collective bargaining agreement or other agreement with a labor union, works council or other employee representative body (other than any statutorily mandated agreement in non-U.S. jurisdictions), and there are no such agreements which pertain to employees of SeaSpine in existence or in negotiation. No employees of SeaSpine are represented by a labor union, works council or other employee representative body (other than any statutorily mandated representation in non-U.S. jurisdictions). SeaSpine has not experienced any strike or material grievance, claim of unfair labor practices, or other collective bargaining dispute within the past two (2) years. SeaSpine will not incur any notice, consultation or consent obligations with respect to any labor union, works council or other employee representative body in connection with the execution of this Agreement or the consummation of the transactions contemplated hereby. There are no, and for the past four (4) years there have been no, Actions or any material disputes pending or threatened between SeaSpine and any of its employees or independent contractors. To SeaSpine's knowledge, there are no, and for the past four (4) years there have been no Actions or any material disputes pending or threatened (i) by or before any Governmental Body affecting SeaSpine concerning employment matters and (ii) there is no current campaign being conducted to solicit cards from or otherwise organize employees of SeaSpine or to authorize a labor union, works council or other employee representative body to request that the National Labor Relations Board (or any other Governmental Body) certify or otherwise recognize such a body

A-32

with respect to employees of SeaSpine, and SeaSpine has not been subject to an application by a labor union, works council or other employee representative body to be declared a common or related employer under labor relations legislation. SeaSpine is in compliance in all material respects with all Laws relating to the employment of labor, including all such Laws relating to wages, hours, civil and/or human rights, harassment, discrimination and/or retaliation in employment, reasonable accommodation, unfair competition, affirmative action, pay equity, employment equity, workers' compensation, safety and health, worker classification (including employee-independent contractor classification and the proper classification of employees as exempt employees and non-exempt employees), the Worker Adjustment and Retraining Notification Act ("WARN") and any similar foreign, state, provincial or local "mass layoff" or "plant closing" Law. No allegation, complaint, charge or claim (formal or otherwise) of sexual or racial harassment, sexual assault, sexual or racial misconduct, sex/gender or racial discrimination or similar behavior (a "Misconduct Allegation") has been made at any time within the past four (4) years against any Person who is or was an officer, director, manager or supervisory-level employee of SeaSpine in such person's capacity as such or, to the knowledge of SeaSpine, in any other capacity, nor are any Misconduct Allegations pending or, to the knowledge of SeaSpine, threatened, nor is there any reasonable basis for such a Misconduct Allegation. Within the past four (4) years, SeaSpine has not entered into any settlement agreement, tolling agreement, non-disparagement agreement, confidentiality agreement or non-disclosure agreement, or any Contract or provision similar to any of the foregoing relating directly or indirectly to any Misconduct Allegation against SeaSpine or any person who is or was an officer, director, manager, employee or independent contractor of SeaSpine. There has been no "mass layoff" or "plant closing" (as defined by WARN or any similar foreign, state, provincial or local Laws) with respect to SeaSpine within the six (6) months prior to the Closing Date. As of the date hereof, to SeaSpine's knowledge, no current executive, key employee or group of employees has given notice of termination of employment or otherwise disclosed plans to SeaSpine or any of its Subsidiaries to terminate employment with SeaSpine or any of its Subsidiaries within the next twelve (12)  months.

3.21    FDA and Regulatory Matters.

(a)    Except as has not and would not reasonably be expected to have, individually or in the aggregate, a SeaSpine Material Adverse Effect, SeaSpine is, and since December 31, 2018, has been, in compliance with all Healthcare Laws applicable to SeaSpine and its Products, including requirements relating to design, clinical and non-clinical research and/or testing, product approval or clearance, premarketing notification, labeling, advertising and promotion, record-keeping, adverse event or medical device reporting, reporting of corrections and removals, current good tissue practice (GTP), and current good manufacturing practice (GMP) for biological, tissue, and medical device products, and no officer, director, manager or managing director of SeaSpine, or to the knowledge of SeaSpine, any other Person, has engaged in any act on behalf of SeaSpine that violates any Healthcare Law. To SeaSpine's knowledge, any contract manufacturers assisting in the manufacture of the Products or Product components are, and, since December 31, 2018, have been, in compliance with the FDA's establishment registration and product listing requirements to the extent required by applicable Healthcare Laws insofar as they pertain to the manufacture of Products or Product components for SeaSpine, except as has not and would not reasonably be expected to have, individually or in the aggregate, a SeaSpine Material Adverse Effect. SeaSpine has not received any written notification of any pending or threatened claim, subpoena, civil investigative demand, suit, proceeding, hearing, enforcement, audit, investigation, arbitration or other Action from any Governmental Body, including the Centers for Medicare & Medicaid Services and the U.S. Department of Health and Human Services Office of Inspector General, the U.S. Department of Justice, any U.S. Attorney's Office or state Attorney General, or any comparable state or federal Governmental Body, or any other Person, alleging potential or actual non-compliance by, or Liability of, SeaSpine under any Healthcare Law.

(b)    SeaSpine holds such Permits of Governmental Bodies required for the conduct of its business as currently conducted, including those Permits necessary to permit the design, development, pre-clinical and clinical testing, manufacture, labeling, sale, importation, exportation, storage, shipment, distribution and promotion of its Products in jurisdictions where it currently conducts such activities with respect to each Product (collectively, the "SeaSpine Licenses"), except to the extent where the failure to hold such Permits would not,

A-33

(d)    Orthofix shall have delivered to SeaSpine a certificate of Orthofix executed by a duly authorized officer thereof, dated as of the Closing Date, stating that the conditions in Sections 7.03(a), (b) and (c) have been satisfied;

(e)    Orthofix shall have filed with NASDAQ the Listing of Additional Shares Notice with respect to the Orthofix Shares issued or issuable pursuant to this Agreement, and such Orthofix Shares shall have been approved and authorized for listing on NASDAQ; and

(f)    SeaSpine shall have received the Merger Tax Opinion from SeaSpine Tax Counsel, and such opinion shall not have been withdrawn or adversely modified.

## ARTICLE 8

## TERMINATION

8.01    Termination. This Agreement may be terminated and the transactions contemplated hereby, including the Merger, may be abandoned at any time prior to the Effective Time:

(a)    by the mutual written consent of Orthofix and SeaSpine;

(b)    by Orthofix, if:

(i)    at any time prior to the Effective Time, any of SeaSpine's covenants, obligations, representations or warranties contained in this Agreement shall have been breached or any of SeaSpine's representations or warranties shall have become untrue, such that any of the conditions set forth in Sections 7.02(a) or 7.02(b) would not be satisfied, and any such breach or failure of a representation or warranty to be true is (A) is incapable of being cured by SeaSpine or (B) shall not have been cured within forty-five (45) days of receipt by SeaSpine of written notice from Orthofix of such breach or failure to be true describing in reasonable detail such breach or failure to be true;

(ii)    the SeaSpine Board or any committee thereof (A) shall make a SeaSpine Adverse Recommendation Change, (B) shall not include the SeaSpine Recommendation in the Joint Proxy Statement or (C) shall publicly propose or allow SeaSpine to publicly propose to take any of the actions in clause (A) or (B) of this Section 8.01(b)(ii);

(iii)    SeaSpine materially breaches Section 6.04; or

(iv)    at any time prior to obtaining the Orthofix Stockholder Approval, Orthofix terminates in order to enter into a definitive agreement with respect to a Superior Proposal and Orthofix has otherwise complied with its obligations under Section 6.04;

(c)    by SeaSpine, if:

(i)    at any time prior to the Effective Time, any of Orthofix's or Merger Sub's covenants, obligations, representations or warranties contained in this Agreement shall have been breached or any of Orthofix's or Merger Sub's representations or warranties shall have become untrue, such that any of the conditions set forth in Sections 7.03(a) or 7.03(b) would not be satisfied, and any such breach or failure of a representation or warranty to be true is (A) is incapable of being cured by Orthofix or Merger Sub or (B) shall not have been cured within forty-five (45) days of receipt by Orthofix of written notice from SeaSpine of such breach or failure to be true describing in reasonable detail such breach or failure to be true;

(ii)    the Orthofix Board or any committee thereof (A) shall make an Orthofix Adverse Recommendation Change, (B) shall not include the Orthofix Recommendation in the Joint Proxy Statement or (C) shall publicly propose to or allow Orthofix to publicly propose to take any of the actions in clause (A) or (B) of this Section 8.01(c)(ii);

**Table of Contents**

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

SEASPINE:

SEASPINE HOLDINGS CORPORATION

By: /s/ Keith Valentine
    Name: Keith Valentine
    Title:  President and Chief Executive Officer

ORTHOFIX:

ORTHOFIX MEDICAL INC.

By: /s/ Jon C. Serbousek
    Name: Jon C. Serbousek
    Title:  President and Chief Executive Officer

MERGER SUB:

ORCA MERGER SUB INC.

By: /s/ Jon C. Serbousek
    Name: Jon C. Serbousek
    Title:  President

[Signature Page to Agreement and Plan of Merger]

A-81

Table of Contents

**SIGNATURES**

Pursuant to the requirements of the Securities Act, the registrant has duly caused this Amendment No. 1 to the registration statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Lewisville, Texas, on November 22, 2022.

ORTHOFIX MEDICAL INC.

By: /s/ Jon Serbousek

Name:   Jon Serbousek
Title:     President, Chief Executive Officer, Director

Pursuant to the requirements of the Securities Act of 1933, this Amendment No. 1 to the registration statement has been signed by the following persons, in the capacities indicated below, on November 22, 2022.

| Signature | Title |
|---|---|
| /s/ Jon Serbousek<br>Jon Serbousek | President, Chief Executive Officer, Director (principal executive officer) |
| /s/ Douglas Rice<br>Douglas Rice | Chief Financial Officer (principal financial and accounting officer) |
| *<br>Catherine Burzik | Chair of the Board of Directors |
| *<br>Wayne Burris | Director |
| *<br>Jason Hannon | Director |
| *<br>James Hinrichs | Director |
| *<br>Lilly Marks | Director |
| *<br>Michael Paolucci | Director |
| *<br>John Sicard | Director |
| *<br>Thomas West | Director |

II-7

**Table of Contents**

*By:   /s/ Jon Serbousek
      Jon Serbousek

II-8