# EXHIBIT F

EX-10.1 2 ofix-ex10_1.htm EX-10.1

**Exhibit 10.1**

ORTHOFIX MEDICAL INC.

<u>CHANGE IN CONTROL AND SEVERANCE AGREEMENT</u>

This AGREEMENT (the "<u>Agreement</u>") is made and entered into as of June 19, 2023 (the "<u>Effective Date</u>"), by and between Orthofix Medical Inc., a Delaware corporation (together with its direct and indirect subsidiaries, the "<u>Company</u>"), and Keith C. Valentine (the "<u>Executive</u>").

<u>RECITALS</u>

WHEREAS, the Executive is expected to make significant contributions to the profitability, growth and financial strength of the Company;

WHEREAS, the Company believes that it is important to provide the Executive with severance benefits upon certain terminations of employment to provide the Executive with enhanced financial security and incentive and encouragement to remain with the Company;

WHEREAS, the Company recognizes that the possibility of a Change in Control (as hereinafter defined) and the uncertainty that it would cause could result in the departure or distraction of the Executive, to the detriment of the Company and its stockholders;

WHEREAS, the Company desires to encourage the continued employment of the Executive by the Company and wants assurance that it shall have the continued dedication, loyalty and service of, and the availability of objective advice and counsel from, the Executive notwithstanding the possibility, threat or occurrence of a Change in Control; and

WHEREAS, the Executive is currently party to an employment agreement, effective as of April 28, 2015, between SeaSpine (as defined below) and the Executive, as amended on April 30, 2019 (the "<u>Prior Employment Agreement</u>"), and the parties desire that this Agreement shall constitute a novation of such Prior Employment Agreement, such that effective upon execution and delivery of this Agreement, such Prior Employment Agreement shall be deemed null and void.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Definitions</u>.  As used in this Agreement, the following terms have the following meanings, which are equally applicable to both the singular and plural forms of the terms defined:

(a)    "<u>2012 LTIP</u>" shall mean the Company's 2012 Long-Term Incentive Plan, as amended and/or restated from time-to-time (including after the Effective Date).

(b)    "<u>Board</u>" shall mean the Board of Directors of Parent.

(c)    "<u>Cause</u>" shall mean (i) willful and intentional commission by the Executive of one or more material acts of (A) fraud, misappropriation or embezzlement related to the business or property of the Company or (B) moral turpitude; (ii) conviction for, or guilty plea to, or plea of nolo contendere to, a felony; or (iii) fraud or willful misconduct committed by the Executive that caused or otherwise materially contributed to the requirement for an accounting restatement of the Company's financial statements due to noncompliance with any financial reporting requirement (other than a restatement due to a change in accounting rules). No act or omission shall be deemed willful, intentional or material for purposes of this

definition if taken or omitted to be taken by the Executive in a good faith belief that such act or omission to act was in the best interests of the Company or if done at the direction of the Board or the board of directors or principal executive officer of any acquirer of the Company.

(d)    "Change in Control" shall mean the occurrence of any of the following events:

(i) the acquisition by any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Exchange Act) of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act), in any individual transaction or series of related transactions, of 50% or more of either (A) the then outstanding shares of common stock of Parent (the "Outstanding Common Stock") or (B) the combined voting power of the then outstanding voting securities of Parent entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following:  (1) any acquisition directly from Parent, other than an acquisition by virtue of the exercise of a conversion privilege unless the security being so converted was itself acquired directly from Parent; (2) any acquisition by Parent; (3) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by Parent or any entity controlled by Parent; or (4) any acquisition pursuant to a transaction which complies with clauses (A), (B) and (C) of subsection (iii) of this definition of Change in Control;

(ii) a change in the composition of the Board such that the individuals who as of the Effective Date constitute the Board (the "Incumbent Board") cease for any reason to constitute at least a majority of the Board; provided, however, for purposes of this paragraph, that any individual who becomes a member of the Board subsequent to the Effective Date, whose appointment, election, or nomination for election by Parent's stockholders was approved by a vote of at least a majority of those individuals who are members of the Board and who were also members of the Incumbent Board (or deemed to be such pursuant to this proviso) shall be considered as though such individual were a member of the Incumbent Board; but provided further that any such individual whose initial assumption of office occurs as a result of either an actual or threatened election contest (as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act) or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board shall not be so considered as a member of the Incumbent Board;

(iii) consummation of a reorganization, merger, consolidation or other business combination or the sale or other disposition of all or substantially all of the assets of Parent (including assets that are shares held by Parent in its subsidiaries) (any such transaction, a "Business Combination"); expressly excluding, however, any such Business Combination pursuant to which all of the following conditions are met:  (A) all or substantially all of the Person(s) who are the beneficial owners of the Outstanding Common Stock and Outstanding Voting Securities, respectively, immediately prior to such Business Combination will beneficially own, directly or indirectly, more than 50% of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the entity resulting from such Business Combination (including, without limitation, an entity which as a result of such transaction owns Parent or all or substantially all of Parent's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination, of the Outstanding Common Stock and Outstanding Voting Securities, as the case may be, (B) no Person (other than Parent, any employee benefit plan (or related trust) of Parent or such entity resulting from such Business Combination) will beneficially own, directly or indirectly, 50% or more of, respectively, the outstanding shares of common stock of the entity resulting from such Business Combination or the combined voting power of the outstanding voting securities of such entity entitled to vote generally in the election of directors except to the extent that such ownership existed prior to the Business Combination,

IN WITNESS WHEREOF, each of the undersigned has executed this Agreement as of the date first above written.

ORTHOFIX MEDICAL INC.


By: /s/ Michael E. Paolucci
      Michael E. Paolucci
      Chair of the Compensation and Talent Development Committee



EXECUTIVE


/s/ Keith C. Valentine
Keith C. Valentine

EX-10.2 3 ofix-ex10_2.htm EX-10.2

**Exhibit 10.2**

ORTHOFIX MEDICAL INC.

CHANGE IN CONTROL AND SEVERANCE AGREEMENT

This AGREEMENT (the "Agreement") is made and entered into as of June 19, 2023 (the "Effective Date"), by and between Orthofix Medical Inc., a Delaware corporation (together with its direct and indirect subsidiaries, the "Company"), and John Bostjancic (the "Executive").

RECITALS

WHEREAS, the Executive is expected to make significant contributions to the profitability, growth and financial strength of the Company;

WHEREAS, the Company believes that it is important to provide the Executive with severance benefits upon certain terminations of employment to provide the Executive with enhanced financial security and incentive and encouragement to remain with the Company;

WHEREAS, the Company recognizes that the possibility of a Change in Control (as hereinafter defined) and the uncertainty that it would cause could result in the departure or distraction of the Executive, to the detriment of the Company and its stockholders;

WHEREAS, the Company desires to encourage the continued employment of the Executive by the Company and wants assurance that it shall have the continued dedication, loyalty and service of, and the availability of objective advice and counsel from, the Executive notwithstanding the possibility, threat or occurrence of a Change in Control; and

WHEREAS, the Executive is a "Participant" as defined in that certain Senior Leadership Retention and Severance Plan of SeaSpine Holdings Corporation (the "SLRSP"), and the parties desire that this Agreement shall constitute a novation of the Executive's rights as a Participant under the SLRSP, and that this Agreement shall (i) supersede the Executive's prior cash severance benefits and other rights under Sections 3 and 6 of the SLRSP, which benefits and rights shall be null and void, and (ii) supersede the Executive's rights under Section 4 of the SLRSP with respect to any Company equity awards granted to the Executive effective on or after January 5, 2023 ("Post-Merger Grants"), which Section 4 of the SLRSP shall be null and void with respect to any and all Post-Merger Grants.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Definitions. As used in this Agreement, the following terms have the following meanings, which are equally applicable to both the singular and plural forms of the terms defined:

(a)    "2012 LTIP" shall mean the Company's 2012 Long-Term Incentive Plan, as amended and/or restated from time-to-time (including after the Effective Date).

(b)    "Board" shall mean the Board of Directors of Parent.

(c)    "Cause" shall mean (i) willful and intentional commission by the Executive of one or more material acts of (A) fraud, misappropriation or embezzlement related to the business or property of the Company or (B) moral turpitude; (ii) conviction for, or guilty plea to, or plea of nolo contendere to, a felony; or (iii) fraud or willful misconduct committed by the Executive that caused or otherwise materially

contributed to the requirement for an accounting restatement of the Company's financial statements due to noncompliance with any financial reporting requirement (other than a restatement due to a change in accounting rules). No act or omission shall be deemed willful, intentional or material for purposes of this definition if taken or omitted to be taken by the Executive in a good faith belief that such act or omission to act was in the best interests of the Company or if done at the direction of the Board or the board of directors or principal executive officer of any acquirer of the Company.

(d)      "Change in Control" shall mean the occurrence of any of the following events:

(i) the acquisition by any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Exchange Act) of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act), in any individual transaction or series of related transactions, of 50% or more of either (A) the then outstanding shares of common stock of Parent (the "Outstanding Common Stock") or (B) the combined voting power of the then outstanding voting securities of Parent entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following:  (1) any acquisition directly from Parent, other than an acquisition by virtue of the exercise of a conversion privilege unless the security being so converted was itself acquired directly from Parent; (2) any acquisition by Parent; (3) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by Parent or any entity controlled by Parent; or (4) any acquisition pursuant to a transaction which complies with clauses (A), (B) and (C) of subsection (iii) of this definition of Change in Control;

(ii) a change in the composition of the Board such that the individuals who as of the Effective Date constitute the Board (the "Incumbent Board") cease for any reason to constitute at least a majority of the Board; provided, however, for purposes of this paragraph, that any individual who becomes a member of the Board subsequent to the Effective Date, whose appointment, election, or nomination for election by Parent's stockholders was approved by a vote of at least a majority of those individuals who are members of the Board and who were also members of the Incumbent Board (or deemed to be such pursuant to this proviso) shall be considered as though such individual were a member of the Incumbent Board; but provided further that any such individual whose initial assumption of office occurs as a result of either an actual or threatened election contest (as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act) or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board shall not be so considered as a member of the Incumbent Board;

(iii) consummation of a reorganization, merger, consolidation or other business combination or the sale or other disposition of all or substantially all of the assets of Parent (including assets that are shares held by Parent in its subsidiaries) (any such transaction, a "Business Combination"); expressly excluding, however, any such Business Combination pursuant to which all of the following conditions are met:  (A) all or substantially all of the Person(s) who are the beneficial owners of the Outstanding Common Stock and Outstanding Voting Securities, respectively, immediately prior to such Business Combination will beneficially own, directly or indirectly, more than 50% of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the entity resulting from such Business Combination (including, without limitation, an entity which as a result of such transaction owns Parent or all or substantially all of Parent's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination, of the Outstanding Common Stock and Outstanding Voting Securities, as the case may be, (B) no Person (other than Parent, any employee benefit plan (or related trust) of Parent or such entity resulting from such Business Combination) will beneficially own, directly or indirectly, 50% or more of, respectively, the outstanding shares of common stock of the entity resulting from such Business Combination or the

IN WITNESS WHEREOF, each of the undersigned has executed this Agreement as of the date first above written.

ORTHOFIX MEDICAL INC.


By: /s/ Keith C. Valentine
    Keith C. Valentine
    President and Chief Executive Officer



EXECUTIVE


/s/ John Bostjancic
John Bostjancic

EX-10.5 6 ofix-ex10_5.htm EX-10.5

**Exhibit 10.5**

ORTHOFIX MEDICAL INC.

CHANGE IN CONTROL AND SEVERANCE AGREEMENT

This AGREEMENT (the "Agreement") is made and entered into as of June 19, 2023 (the "Effective Date"), by and between Orthofix Medical Inc., a Delaware corporation (together with its direct and indirect subsidiaries, the "Company"), and Patrick L. Keran (the "Executive").

RECITALS

WHEREAS, the Executive is expected to make significant contributions to the profitability, growth and financial strength of the Company;

WHEREAS, the Company believes that it is important to provide the Executive with severance benefits upon certain terminations of employment to provide the Executive with enhanced financial security and incentive and encouragement to remain with the Company;

WHEREAS, the Company recognizes that the possibility of a Change in Control (as hereinafter defined) and the uncertainty that it would cause could result in the departure or distraction of the Executive, to the detriment of the Company and its stockholders;

WHEREAS, the Company desires to encourage the continued employment of the Executive by the Company and wants assurance that it shall have the continued dedication, loyalty and service of, and the availability of objective advice and counsel from, the Executive notwithstanding the possibility, threat or occurrence of a Change in Control; and

WHEREAS, the Executive is a "Participant" as defined in that certain Senior Leadership Retention and Severance Plan of SeaSpine Holdings Corporation (the "SLRSP"), and the parties desire that this Agreement shall constitute a novation of the Executive's rights as a Participant under the SLRSP, and that this Agreement shall (i) supersede the Executive's prior cash severance benefits and other rights under Sections 3 and 6 of the SLRSP, which benefits and rights shall be null and void, and (ii) supersede the Executive's rights under Section 4 of the SLRSP with respect to any Company equity awards granted to the Executive effective on or after January 5, 2023 ("Post-Merger Grants"), which Section 4 of the SLRSP shall be null and void with respect to any and all Post-Merger Grants.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Definitions. As used in this Agreement, the following terms have the following meanings, which are equally applicable to both the singular and plural forms of the terms defined:

(a) "2012 LTIP" shall mean the Company's 2012 Long-Term Incentive Plan, as amended and/or restated from time-to-time (including after the Effective Date).

(b) "Board" shall mean the Board of Directors of Parent.

(c) "Cause" shall mean (i) willful and intentional commission by the Executive of one or more material acts of (A) fraud, misappropriation or embezzlement related to the business or property of the Company or (B) moral turpitude; (ii) conviction for, or guilty plea to, or plea of nolo contendere to, a felony; or (iii) fraud or willful misconduct committed by the Executive that caused or otherwise materially

contributed to the requirement for an accounting restatement of the Company's financial statements due to noncompliance with any financial reporting requirement (other than a restatement due to a change in accounting rules). No act or omission shall be deemed willful, intentional or material for purposes of this definition if taken or omitted to be taken by the Executive in a good faith belief that such act or omission to act was in the best interests of the Company or if done at the direction of the Board or the board of directors or principal executive officer of any acquirer of the Company.

(d)    "Change in Control" shall mean the occurrence of any of the following events:

(i) the acquisition by any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Exchange Act) of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act), in any individual transaction or series of related transactions, of 50% or more of either (A) the then outstanding shares of common stock of Parent (the "Outstanding Common Stock") or (B) the combined voting power of the then outstanding voting securities of Parent entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following:  (1) any acquisition directly from Parent, other than an acquisition by virtue of the exercise of a conversion privilege unless the security being so converted was itself acquired directly from Parent; (2) any acquisition by Parent; (3) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by Parent or any entity controlled by Parent; or (4) any acquisition pursuant to a transaction which complies with clauses (A), (B) and (C) of subsection (iii) of this definition of Change in Control;

(ii) a change in the composition of the Board such that the individuals who as of the Effective Date constitute the Board (the "Incumbent Board") cease for any reason to constitute at least a majority of the Board; provided, however, for purposes of this paragraph, that any individual who becomes a member of the Board subsequent to the Effective Date, whose appointment, election, or nomination for election by Parent's stockholders was approved by a vote of at least a majority of those individuals who are members of the Board and who were also members of the Incumbent Board (or deemed to be such pursuant to this proviso) shall be considered as though such individual were a member of the Incumbent Board; but provided further that any such individual whose initial assumption of office occurs as a result of either an actual or threatened election contest (as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act) or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board shall not be so considered as a member of the Incumbent Board;

(iii) consummation of a reorganization, merger, consolidation or other business combination or the sale or other disposition of all or substantially all of the assets of Parent (including assets that are shares held by Parent in its subsidiaries) (any such transaction, a "Business Combination"); expressly excluding, however, any such Business Combination pursuant to which all of the following conditions are met:  (A) all or substantially all of the Person(s) who are the beneficial owners of the Outstanding Common Stock and Outstanding Voting Securities, respectively, immediately prior to such Business Combination will beneficially own, directly or indirectly, more than 50% of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the entity resulting from such Business Combination (including, without limitation, an entity which as a result of such transaction owns Parent or all or substantially all of Parent's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination, of the Outstanding Common Stock and Outstanding Voting Securities, as the case may be, (B) no Person (other than Parent, any employee benefit plan (or related trust) of Parent or such entity resulting from such Business Combination) will beneficially own, directly or indirectly, 50% or more of, respectively, the outstanding shares of common stock of the entity resulting from such Business Combination or the

IN WITNESS WHEREOF, each of the undersigned has executed this Agreement as of the date first above written.

ORTHOFIX MEDICAL INC.

By: /s/ Keith C. Valentine
    Keith C. Valentine
    President and Chief Executive Officer

EXECUTIVE

/s/ Patrick L. Keran
Patrick L. Keran