**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  | | |
|---|---|---|
| | x | |
| | : | |
| | : | No. 2:24-cv-00690-JRG |
| | : | |
| | : | Honorable Rodney Gilstrap |
| IN RE ORTHOFIX MEDICAL INC. SEC. LITIG. | : | District Court Judge |
| | : | |
| | : | ORAL ARGUMENT REQUESTED |
| | : | |
| | : | |
| | : | |
| | x | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ORTHOFIX,
SEASPINE, AND CERTAIN INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED COMPLAINT**

Samuel F. Baxter
Texas State Bar No. 01938000
MCKOOL SMITH, P.C.
104 East Houston Street, Suite 300
Marshall, Texas 75670
Tel:  (903) 923-9000
Fax:  (903) 923-9099
sbaxter@mckoolsmith.com

Jeffrey T. Scott (admitted *pro hac vice*)
N.Y. State Bar No. 2890374
Julia A. Malkina (admitted *pro hac vice*)
N.Y. State Bar No. 5054572
Jacob E. Cohen (admitted *pro hac vice*)
N.Y. State Bar No. 4787271
Rachel Rolnick (admitted *pro hac vice*)
N.Y. State Bar No. 5756689
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588
scottj@sullcrom.com
malkinaj@sullcrom.com
cohenja@sullcrom.com
rolnickr@sullcrom.com

*Attorneys for Orthofix Medical Inc., SeaSpine Holdings Corp., Jon C. Serbousek, Douglas C.
Rice, Catherine M. Burzik, Wayne Burris, Jason M. Hannon, James F. Hinrichs, Lilly Marks,
Michael E. Paolucci, John E. Sicard, Thomas A. West, Kimberley A. Elting, Stuart Essig,
John Henneman, III, and Shweta Singh Maniar*

July 9, 2025

## TABLE OF CONTENTS

*Page*

I.    Plaintiffs Have Not Pled Any Actionable Misstatements ..................................................... 1

II.   Plaintiffs Have Not Pled a Strong Inference of Scienter ..................................................... 7

III.  Plaintiffs Have Not Pled Loss Causation .......................................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Allied Irish Banks, PLC* v. *Citibank, N.A.*,
2015 WL 4104703 (S.D.N.Y. June 30, 2015) ...........................................................................9

*Ark. Tchr. Ret. Sys.* v. *Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ..................................................................................................3, 5

*Carvelli* v. *Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ..........................................................................................2, 4

*Catogas* v. *Cyberonics, Inc.*,
292 F. App'x 311 (5th Cir. 2008) ...........................................................................................9

*City of Dearborn Heights* v. *Waters Corp.*,
632 F.3d 751 (1st Cir. 2011) ...................................................................................................8

*City of Pontiac* v. *UBS AG*,
752 F.3d 173 (2d Cir. 2014) ...............................................................................................2, 4

*Emp's Ret. Sys.* v. *Whole Foods Mkt., Inc.*,
905 F.3d 892 (5th Cir. 2018) .........................................................................................1, 2, 3

*Energy Conversion Devices Liquidation Tr.* v. *Trina Solar Ltd.*,
833 F.3d 680 (6th Cir. 2016) ..................................................................................................8

*Glazer Cap. Mgmt., LP* v. *Magistri*,
549 F.3d 736 (9th Cir. 2008) ..................................................................................................6

*Goldstein* v. *MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ................................................................................................10

*Hutchison* v. *Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011) ...................................................................................................4

*I. Meyer Pincus & Assocs.* v. *Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991) ...................................................................................................7

*IBEW* v. *Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ..................................................................................................6

*In re Astrazeneca PLC Sec. Litig.*,
2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022) ........................................................................3

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008) ...............................................................................7

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ...............................................................................9

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
2014 WL 2815571 (S.D.N.Y. June 23, 2014) ......................................................5

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) .........................................................5

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)................................................................................10

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)...................................................................9

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013)....................................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018).......................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
389 F. Supp. 3d 221 (S.D.N.Y. 2019)...................................................................4

*In re Tenet Healthcare Corp. Sec. Litig.*,
2017 WL 11638941 (N.D. Tex. Dec. 20, 2017) ...................................................8

*J & R Mktg.* v. *Gen. Motors Corp.*,
549 F.3d 384 (6th Cir. 2008) ...............................................................................2

*Jacobowitz* v. *Range Res. Corp.*,
596 F. Supp. 3d 659 (N.D. Tex. 2022) .................................................................6

*Kaplan* v. *Utilicorp United, Inc.*,
9 F.3d 405 (5th Cir. 1993) ....................................................................................9

*Lian* v. *Tuya Inc.*,
2025 WL 733253 (S.D.N.Y. Mar. 7, 2025) ..........................................................5

*Linenweber* v. *Sw. Airlines Co.*,
693 F. Supp. 3d 661 (N.D. Tex. 2023) .................................................................5

*MAZ Partners LP* v. *First Choice Healthcare Sols., Inc.*,
2019 WL 5394011 (M.D. Fla. Oct. 16, 2019) ......................................................9

*Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*,
2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ...........................................................................8

*Meyer* v. *Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)......................................................................................................5, 6

*Nykredit Portefølje Admin. A/S* v. *Propetro Holding Corp.*,
2021 WL 9037758 (W.D. Tex. Sept. 13, 2021)........................................................................3

*Owens* v. *Jastrow*,
789 F.3d 529 (5th Cir. 2015) .....................................................................................................7

*Parnes* v. *Gateway 2000, Inc.*,
122 F.3d 539 (8th Cir. 1997) .....................................................................................................7

*Police & Fire Ret. Sys.* v. *Plains All Am. Pipeline, LP*,
777 F. App'x 726 (5th Cir. 2019) .............................................................................................2

*Pub. Emps. Ret. Sys.* v. *Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) .....................................................................................................10

*Retail Wholesale* v. *Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ...................................................................................................4, 10

*Richman* v. *Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012)......................................................................................5

*Saltz* v. *First Frontier, LP*,
485 F. App'x 461 (2d Cir. 2012) ..............................................................................................8

*Shivangi* v. *Dean Witter Reynolds, Inc.*,
825 F.2d 885 (5th Cir. 1987) .....................................................................................................8

*Singh* v. *Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)........................................................................................................6

*Smallen* v. *W. Union Co.*,
950 F.3d 1297 (10th Cir. 2020) ................................................................................................7

*Stratte-McClure* v. *Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015).........................................................................................................9

*United States* v. *Skilling*,
554 F.3d 529 (5th Cir. 2009) .....................................................................................................2

*Weir* v. *Allianz SE*,
2025 WL 1792516 (9th Cir. June 27, 2025) ...........................................................................5

Plaintiffs' Opposition confirms that this lawsuit is an opportunistic attempt to transform an employment matter into securities fraud—exactly the type of case Congress meant to curb through the PLSRA. Tellingly, Plaintiffs ignore the Fifth Circuit's controlling decision in *Emp's Ret. Sys.* v. *Whole Foods Mkt., Inc.*, 905 F.3d 892, 901 (5th Cir. 2018), which held that the types of generic statements Plaintiffs challenge about integrity, corporate culture, and the like are immaterial as a matter of law. Statement Types 1, 3, 4, 5, and 6 should be dismissed for that reason alone. As to the remaining statement, Plaintiffs do not cite a single case holding that representations and warranties in a merger agreement are actionable where the prospectus expressly tells investors not to rely on them. They are not.

Nor do Plaintiffs come close to pleading fraudulent intent. They concede that the Orthofix Executives had no actual knowledge of the Former Executives' personal conduct. Instead, Plaintiffs argue that the Orthofix Executives should have known—which is negligence, not scienter—based on a single "red flag": that five years before the merger SeaSpine had been sued for employment discrimination, which it settled for under $1 million and instituted remedial measures. Plaintiffs cite no case suggesting that this is a sufficient red flag to put an acquiring company on notice of ongoing, unmediated illegality. As to the Former Executives, there is no imputation of scienter when individuals, like the Former Executives here, act adverse to the company. The Complaint should be dismissed.

## I.    Plaintiffs Have Not Pled Any Actionable Misstatements.

*1. The Challenged Generic Statements Are Immaterial.* Every appellate court to address the actionability of generic statements about integrity and the like—including the Fifth Circuit—has held that they are immaterial as a matter of law. (MTD Br. 15-18.) In arguing that Statement Types 1, 3, 4, 5, and 6 are actionable (Opp. 21-23), Plaintiffs rely entirely on outlier district court decisions that are not even good law in their home circuits and contravene the Fifth Circuit's

decision in *Whole Foods*, which Plaintiffs never address.  *Whole Foods* held that "generalized" statements "even if false—are immaterial" because "they do not alter a reasonable investor's assessment of the company's prospects."  905 F.3d at 901.[1]  Consequently, it is irrelevant that generic statements "emphasize" an "important" topic like "integrity."  (Opp. 22.)  The Fifth Circuit rejected that argument in *Whole Foods*.  Although "the significance of a [company's] reputation is undeniable," "[P]laintiffs conflate[] the importance of a [company's] reputation for integrity with the materiality of [its] statements regarding its reputation."  *Whole Foods*, 905 F.3d at 902; *see J & R Mktg*. v. *Gen. Motors Corp.*, 549 F.3d 384, 396 (6th Cir. 2008) (same).  Generic statements are not material to "assessing a potential investment, for the simple fact that almost every [company] makes these statements."  *Whole Foods*, 905 F.3d at 902.

Nor does it matter whether a defendant's alleged conduct is "directly at odds" with the generic statements.  (Opp. 22.)  *Whole Foods* rejected that too:  even though "Whole Foods ha[d] built a brand around holding itself to higher ethical standards than its competitors," which it allegedly failed to uphold by systematically overcharging customers, "that does not change the fact that a reasonable investor will not judge Whole Foods' value based on its own generalized and self-serving statements."  905 F.3d at 902.  As the Second Circuit put it, whether statements are "verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *City of Pontiac* v. *UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *see Carvelli* v. *Ocwen Fin. Corp.*, 934 F.3d 1307, 1321 (11th Cir. 2019) (same); *Police & Fire Ret. Sys.* v. *Plains All Am. Pipeline, LP*, 777 F. App'x 726, 731 (5th Cir. 2019) (controls "turned out to be insufficient, but the

---

[1] The only circuit court decision Plaintiffs cite (Opp. 22) did not involve generic statements. *See United States* v. *Skilling*, 554 F.3d 529, 554 (5th Cir. 2009) (specific statement that Enron was "not a trading business" and had "stable, high-growth").

statements were generalized positive goals"). Accordingly, Plaintiffs get no support from *Nykredit Portefølje Admin. A/S* v. *Propetro Holding Corp.*, 2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) (Opp. 23). Even though that case held that a company's generic statement about "commitment to safe and environmentally responsible operations" was actionable because it was "at odds with [the] alleged conduct," *id.* at \*23, the court never cited the Fifth Circuit's controlling decision in *Whole Foods*, which squarely rejected that reasoning and held that indistinguishable statements about "commitments to transparency and quality—even if false—are immaterial." 905 F.3d at 901.

Nor do generic statements become actionable for failure to disclose specific misconduct under "the duty to disclose other information necessary to make [] statements not misleading." (Opp. 22.) Because the "statements that Plaintiffs have identified are at such a high level of generality, and the alleged omitted facts so granular, [] there is no violation of that principle here." *In re Astrazeneca PLC Sec. Litig.*, 2022 WL 4133258, at \*7 (S.D.N.Y. Sept. 12, 2022). In other words, as the Second Circuit recently emphasized, "the duty to disclose more is triggered only when that which *is* disclosed is sufficiently specific." *Ark. Tchr. Ret. Sys.* v. *Goldman Sachs Grp., Inc.*, 77 F.4th 74, 101 (2d Cir. 2023). Thus, the focus is not whether a challenged statement allegedly omitted an "admission of severe wrongdoing," but rather on "the level of detail in the disclosure" and "whether the disclosure as written is specific enough to evoke investor reliance." *Id.* at 101-02. That legal doctrine is what "avoids turning securities claims into a game of litigation-by-hindsight" where plaintiffs can "find a road to success in the rearview mirror" using the playbook that Plaintiffs try here: "they would need only find negative news" and "then point to any previous disclosure from the company which touches upon a similar subject, such as that company's commitment to complying with the law—no matter how generic that statement is." *Id.*

Plaintiffs throw out a few other distractions. They argue that a "stock price drop" and

-3-

analyst commentary after the Former Executives were terminated suggests that the challenged generic statements were material.  (Opp. 21.)  Not so.  "Market reaction to [a corrective] disclosure . . . is by itself too blunt an instrument to be depended on in considering whether a fact is material." *Hutchison* v. *Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (quoting SEC guidance); *see Retail Wholesale* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) (same). Plaintiffs also argue that the generic statements were material because Orthofix's Board determined that the Former Executives engaged in "material" misconduct warranting termination. (Opp. 20.)  That is a non sequitur.  A determination that conduct warrants termination does not change the genericness of the challenged statements, which is the touchstone for materiality.

The two principal cases Plaintiffs rely on are particularly off point.  Plaintiffs cite (Opp. 22, 28) the initial motion to dismiss decision in *In re Signet Jewelers Ltd. Securities Litigation*, which held, contrary to Second Circuit authority, that statements "in a code of conduct are actionable where they are directly at odds with the conduct alleged in a complaint."  2018 WL 6167889, at *5-6 (S.D.N.Y. Nov. 26, 2018); *see UBS*, 752 F.3d at 183 (that statements are "knowingly and verifiably false when made does not cure their generality, which is what prevents them from" being material to an investment decision).  But on reconsideration, the court held instead that defendants' statements were actionable because they were a direct response to a "credible [public] accusation" of "rampant sexual harassment" and meant to "reassure the investing public that Signet did not, in fact, have a toxic workplace."  *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019).[2]  Because Plaintiffs do not allege that Defendants issued specific denials in

---

[2] To be sure, no circuit has endorsed this theory of materiality, and at least one circuit has rejected it.  In *Carvelli*, the Eleventh Circuit held that the company's generic statements about "regulatory compliance" did not "*become* materially misleading" because the market construed them as "promises about improvements and progress" in the wake of "regulatory problems."  934 F.3d at 1321.  No matter the context, "a reasonable investor wouldn't have regarded such corporate banalities as relevant in deciding whether to invest in Ocwen in the first place."  *Id.* at 1322; *see*

response to a public uproar, *Signet* would not apply even on its own terms.

Plaintiffs also highlight a series of decisions by the district court in *Goldman Sachs*. (Opp. 21, 23-24 & n.13.)   The court there denied the motion to dismiss, and then denied reconsideration and leave for interlocutory appeal of its erroneous decision holding that Goldman Sachs' generic statements about "integrity and honesty" and "extensive procedures and controls" were material because the statements "were directly at odds with its alleged conduct."  (*Id.*)[3]  Both parties then had to incur significant time and expense over the course of 8 years litigating class certification—including three trips to the Second Circuit and a trip to the Supreme Court—all of which could have been avoided.  *See Goldman Sachs*, 77 F.4th at 86-90, 105 (decertifying the class and lamenting the case's "long and difficult history").  Judge Sullivan emphasized the point in his concurrence that the case could and should have been easily resolved at the pleading stage because the Second Circuit's "materiality precedents . . . demonstrate that no reasonable investor would have attached any significance to the generic statements on which Plaintiffs' claims are based." *Id.* at 109.  This Court should not make the same error.

2. ***The Challenged Generic Statements Are Not False.***  Plaintiffs have no serious response to the cases cited in the Opening Brief (at 18-19) explaining that generic statements are not "guarantee[s] that problems will not arise." *Linenweber* v. *Sw. Airlines Co.*, 693 F. Supp. 3d 661, 676 (N.D. Tex. 2023); *see Weir* v. *Allianz SE*, 2025 WL 1792516, at *1 (9th Cir. June 27, 2025) (same).  Plaintiffs instead claim that the Second Circuit held in *Meyer* v. *Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014), that generic statements about compliance are rendered false if

---

*Lian* v. *Tuya Inc.*, 2025 WL 733253, at *8 (S.D.N.Y. Mar. 7, 2025) ("[I]t is usually unreasonable for an investor to take general statements regarding an issuer's business for more than what they are worth, reading into them sweeping denials of discrete instances of misconduct.").

[3] *See Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277-80 (S.D.N.Y. 2012) (denying dismissal); 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) (denying reconsideration); 2014 WL 5002090, at *3 (S.D.N.Y. Oct. 7, 2014) (denying interlocutory appeal).

there are "substantial violations." (Opp. 25.)  Not so.  *Meyer* did not involve the kind of generic statements at issue here, but specific statements that (i) "described [the company's] compliance mechanisms in confident detail, including references to 24-hour monitoring teams[] [and] specific compliance equipment," and (ii) emphasized "its clean compliance record" by averring to having never been fined for regulatory violations.  *Singh* v. *Cigna Corp.*, 918 F.3d 57, 63-64 (2d Cir. 2019) (discussing *Meyer*, 761 F.3d at 247-48).  "Such detailed descriptions stand in sharp contrast to [Defendants'] simple and generic assertions about having 'policies and procedures' and allocating 'significant resources.'"  *Id.*[4]

3.    ***SeaSpine's Representations and Warranties in the Merger Agreement Are Not Actionable.***  Plaintiffs argue that a merger agreement's representations and warranties can be actionable if the merger agreement only states obliquely that investors are not "third-party beneficiaries." (Opp. 15-18 (citing *Glazer Cap. Mgmt., LP* v. *Magistri*, 549 F.3d 736, 741 (9th Cir. 2008), and cases following *Glazer*).)  But here, the merger prospectus itself expressly warned that "[i]nvestors . . . *should not rely on the representations and warranties* [in the merger agreement] … as characterizations of the actual state of facts or condition of" SeaSpine, because they were "qualified by confidential disclosures" and materiality thresholds.  (MTD Ex. 7 at 117 (emphasis added).)  None of the cases Plaintiffs cite included an express no-reliance disclaimer *in the prospectus*.  A "reasonable investor would understand the use of 'hedges and disclaimers.'" *Jacobowitz* v. *Range Res. Corp.*, 596 F. Supp. 3d 659, 674 (N.D. Tex. 2022).  After all, courts do "not to attribute to investors a child-like simplicity" and "presume that a reasonable investor can

---

[4] Defendants explained in their Opening Brief (at 19-20) that one reason Statement Type 3 is not "misleading" is because Orthofix "neither stated nor implied anything about" a vetting process. *IBEW* v. *Shaw Grp., Inc.*, 537 F.3d 527, 541-42 (5th Cir. 2008).  Plaintiffs offer no substantive response and instead claim that Defendants did not "adequately brief" the point because they supposedly did not provide "reasoning or authority." (Opp. 28 n.19.)  That is wrong.  Defendants provided both reasoning (the statement implied nothing about vetting) and authority (*Shaw*).

comprehend the basic meaning of plain-English disclosures." *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013). Thus, "[o]nly by discarding common sense and ignoring the multitude of explicit and on-point warnings contained in [the] prospectus could investors have been misled by the [alleged] misrepresentations." *Parnes* v. *Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997); *see I. Meyer Pincus & Assocs.* v. *Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991) (no misstatement where prospectus "disclaims the making of such a prediction"). Nor is there anything inconsistent about "encourag[ing]" shareholders to "read the merger agreement" and also telling them not to rely on one heavily-caveated representation and warranty provision in the 80-page agreement. (Opp. 18.)

None of this matters, however, because under Fifth Circuit law, the inclusion of the express "disclaimer" of reliance on the merger agreement's representations and warranties "neutralize[s] any scienter inference" as to that statement. *Owens* v. *Jastrow*, 789 F.3d 529, 541 (5th Cir. 2015).

## II.    Plaintiffs Have Not Pled a Strong Inference of Scienter.

*1. Plaintiffs Do Not Plead That the Orthofix Executives Acted with Scienter.* Plaintiffs barely try to argue that the Orthofix Executives acted with scienter. Plaintiffs point out that their stale allegations of misconduct at SeaSpine years before the merger are not categorically off limits. (Opp. 30.) But such allegations are not indicative of scienter where, as here, Plaintiffs admit that as a result of the 2021 settlement (AC ¶¶ 65, 133), SeaSpine had "implemented remedial measures to address the issue." *Smallen* v. *W. Union Co.*, 950 F.3d 1297, 1313 (10th Cir. 2020). Accordingly, Plaintiffs' stale allegations here provide no basis to infer that Orthofix knew about and "ignored ongoing, unremedied illegality" around the time of the merger. *Id.*; *see In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008) (same; remediation negates stale allegations).

Plaintiffs also speculate that the Former Executives' alleged misconduct would have been "obvious" to Orthofix during pre-merger due diligence (Opp. 41), but they do not explain how or

why that is so.  Indeed, elsewhere in their brief, they allege the exact opposite:  that the Former Executives "took active steps to conceal" their conduct (Opp. 7).  At any rate, Plaintiffs ignore that, as a matter of law, conditional allegations that Orthofix "would or should have" learned the truth "had [it] conducted even basic due diligence" before the merger are "insufficient to establish scienter."  *Saltz* v. *First Frontier, LP*, 485 F. App'x 461, 465 (2d Cir. 2012); *see* MTD Br. 23-24.

Lastly, Plaintiffs ignore the comparative analysis of competing inferences—a pleading stage analysis unique to securities fraud claims—presumably because they cannot deny the far more compelling inference that the Former Executives "engaged in [improper] conduct without the knowledge or approval of [Orthofix] and actively concealed their actions from [Orthofix] until" the "investigation discovered the conduct."  *In re Tenet Healthcare Corp. Sec. Litig.*, 2017 WL 11638941, at *8 (N.D. Tex. Dec. 20, 2017); *see Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *23 (S.D.N.Y. Mar. 30, 2021) (same).

**2.  *The Former Executives' Knowledge Does Not Establish Scienter as to Orthofix.*[5]** Contrary to Plaintiffs' contention (Opp. 34), the fact that *Shivangi* v. *Dean Witter Reynolds, Inc.*, 825 F.2d 885, 889 (5th Cir. 1987), was a post-trial decision does not negate the court's statement of the *legal standard* that "knowledge of omitted facts does not itself establish scienter"; instead, Plaintiffs need to prove that the executives "intended to deceive [investors] by failing to disclose" those omitted facts.  *See, e.g.*, *City of Dearborn Heights* v. *Waters Corp.*, 632 F.3d 751, 758 (1st Cir. 2011) (affirming dismissal).[6]  Because Plaintiffs do not respond to the point that disclosure of generic statements does not trigger a duty to disclose specific misconduct (MTD Br. 28 n.15), they

---

[5] Because the Former Executives' knowledge cannot be imputed to Orthofix before they joined the company, there is no basis at all for inferring scienter to Orthofix for pre-merger statements.

[6] Judge Sutton has explained why Plaintiffs' "position misunderstands the structure of federal civil litigation":  "If proof of [Fact A] is required to succeed on the claim, allegations of [Fact A] must appear in the complaint to show an entitlement to relief."  *Energy Conversion Devices Liquidation Tr.* v. *Trina Solar Ltd.*, 833 F.3d 680, 688 (6th Cir. 2016).

fail to plead scienter as to the Former Executives.  Where "a complaint 'does not present facts indicating a clear duty to disclose' it does not establish 'strong evidence of conscious misbehavior or recklessness.'"  *Stratte-McClure* v. *Morgan Stanley*, 776 F.3d 94, 107 (2d Cir. 2015).

Moreover, the Former Executives' scienter cannot be imputed to Orthofix under the adverse interest exception.  Plaintiffs observe (Opp. 38) that the "adverse interest" exception does not apply where the company benefits from the misconduct, such as an employee's manipulative trading scheme that booked profits for the company (*MAZ Partners LP* v. *First Choice Healthcare Sols., Inc.*, 2019 WL 5394011, at *17 (M.D. Fla. Oct. 16, 2019)), or bribe payments that secured lucrative contracts (*In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 382-83 (S.D.N.Y. 2015)).  Plaintiffs do not, and cannot, argue that Orthofix received any benefit when the Former Executives made sexist and offensive comments *about Orthofix employees*.  *See Allied Irish Banks, PLC* v. *Citibank, N.A.*, 2015 WL 4104703, at *9 (S.D.N.Y. June 30, 2015) (declining to impute scienter to company where the fraud was "devoted entirely to [employee's] own self-preservation" and "harmed [company] both presently and prospectively").  Plaintiffs also note that some courts have declined to apply the adverse interest exception in securities cases because the plaintiff is an "innocent third party who relies on the agent's apparent authority" (Opp. 39-40), which, "as a practical matter, . . . eliminates the adverse interest exception in [securities] fraud" suits, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 479 (9th Cir. 2015).  But the Fifth Circuit has not adopted that innocent-third-party limitation.  *See Kaplan* v. *Utilicorp United, Inc.*, 9 F.3d 405, 407 (5th Cir. 1993) (applying adverse interest exception in securities case).

## III.    Plaintiffs Have Not Pled Loss Causation.

Plaintiffs cannot argue that the announcement of the Former Executives' terminations "revealed the falsity of [the company's] previous representations," *Catogas* v. *Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008)—*e.g.*, that Orthofix did not, in fact, strive to "promote

lawful and ethical business practices" (AC ¶ 211). To the contrary, as the Ninth Circuit has noted, the alleged corrective disclosure in the form of an executive's termination reveals that the "ethics and compliance policies worked." *Hewlett-Packard*, 845 F.3d at 1277 n.3. Plaintiffs tacitly agree, conceding that the market reaction was driven by concern over the "potential impact to the business" going forward. (Opp. 12.) Thus, Plaintiffs have "at best shown that [the terminations] and resulting negative press stirred investors' concerns that other unknown problems" might arise, which does not establish loss causation. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010).

Plaintiffs counter, quoting a partial sentence from a footnote in *Pub. Emps. Ret. Sys.* v. *Amedisys, Inc.*, 769 F.3d 313, 325 n.5 (5th Cir. 2014), that a corrective disclosure need not "establish prior statements of compliance to be actually false." (Opp. 42.) That is not what *Amedisys* held. Rather, the court rejected "an overly rigid rule" requiring "a conclusive government finding of fraud [] to plead loss causation." 769 F.3d at 325. The court made clear, however, that a "corrective disclosure can come from any source," but only "so long as it 'reveal[s] to the market the falsity' of the prior misstatements." *Id.* at 322. The Former Executives' terminations did not reveal the falsity of Orthofix's statements about enforcing its ethics code.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.[7]

---

[7] The control-person claims should be dismissed for the reasons explained in the Opening Brief. The Court also should deny Plaintiffs' perfunctory request for leave to amend (Opp. 45 n.40), because they "did not proffer a proposed second amended complaint" or identify "additional facts" to "cure the pleading defects." *Goldstein* v. *MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003).

Dated:  July 9, 2025

                                                            Respectfully Submitted,

                                                            /s/ Jeffrey T. Scott
Samuel F. Baxter                                            Jeffrey T. Scott (admitted *pro hac vice*)
Texas State Bar No. 01938000                               N.Y. State Bar No. 2890374
MCKOOL SMITH, P.C.                                         Julia A. Malkina (admitted *pro hac vice*)
104 East Houston Street, Suite 300                         N.Y. State Bar No. 5054572
Marshall, Texas 75670                                      Jacob E. Cohen (admitted *pro hac vice*)
Tel:  (903) 923-9000                                       N.Y. State Bar No. 4787271
Fax:  (903) 923-9099                                       Rachel Rolnick (admitted *pro hac vice*)
sbaxter@mckoolsmith.com                                    N.Y. State Bar No. 5756689
                                                           SULLIVAN & CROMWELL LLP
                                                           125 Broad Street
                                                           New York, New York 10004
                                                           Tel:  (212) 558-4000
                                                           Fax:  (212) 558-3588
                                                           scottj@sullcrom.com
                                                           malkinaj@sullcrom.com
                                                           cohenja@sullcrom.com
                                                           rolnickr@sullcrom.com

*Attorneys for Orthofix Medical Inc., SeaSpine Holdings Corp., Jon C. Serbousek, Douglas C. Rice, Catherine M. Burzik, Wayne Burris, Jason M. Hannon, James F. Hinrichs, Lilly Marks, Michael E. Paolucci, John E. Sicard, Thomas A. West, Kimberley A. Elting, Stuart Essig, John Henneman, III, and Shweta Singh Maniar*

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Jeffrey T. Scott*