**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| | x | |
| | : | |
| | : | No. 2:24-cv-00690-JRG |
| | : | |
| | : | Honorable Rodney Gilstrap |
| IN RE ORTHOFIX MEDICAL INC. SEC. LITIG. | : | District Court Judge |
| | : | |
| | : | ORAL ARGUMENT REQUESTED |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | x | |

## REPLY BY DEFENDANTS BOSTJANCIC, KERAN AND VALENTINE IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT

Jennifer Doan
Texas Bar No. 08809050
Darby V. Doan
Texas Bar No. 00793622
Mariah L. Hornok
Texas Bar No. 24113074
HALTOM & DOAN
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Telephone: (903) 255-1000
Email: jdoan@haltomdoan.com
Email: ddoan@haltomdoan.com
Email: mhornok@haltomdoan.com

Adrienne Ward (admitted *pro hac vice*)
N.Y. State Bar No. 2689461
Kyle Bisceglie (admitted *pro hac vice*)
N.Y. State Bar No. 2702124
Kerrin Klein (admitted *pro hac vice*)
N.Y. State Bar No.4829644
Giovanna Crivello (admitted *pro hac vice*)
N.Y. State Bar No. 5905559
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
award@olshanlaw.com
kbisceglie@olshanlaw.com
kklein@olshanlaw.com
gcrivello@olshanlaw.com

*Attorneys for Defendants John Bostjancic, Patrick Keran, and Keith Valentine*

Table of Contents

Page

ARGUMENT ........................................................................................................................... 1

A.    Plaintiffs Fail to State a Claim Against the Former Executives based on
Statements Contained in the Merger Agreement (Statement Type 2) .................... 1

B.    Plaintiffs Fail to Plead Any Other Actionable Misstatement or Omission ............. 4

1.    All Other Statements (Types 1, 3, 4, 5, and 6) Are Non-Actionable
Generalized Statements, Puffery, Opinions and Corporate
Optimism.................................................................................................... 4

2.    Plaintiffs Fail to Plead a Strong Inference of Scienter.............................. 7

C.    Plaintiffs Fail to Plead Loss Causation .................................................................. 9

D.    Plaintiffs Fail to Plead Claims Under the Securities Act or for Control
Liability ................................................................................................................. 10

CONCLUSION .................................................................................................................... 10

Table of Authorities

Page

CASES

*Brody v. Zix Corp.*,
2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)..........................................................................6

*Catogas v. Cyberonics, Inc.*,
292 F. App'x 311 (5th Cir. 2008) .........................................................................................10

*City of Fort Lauderdale Police & Firefighters' Retirement System v. Pegasystems, Inc.*,
683 F. Supp. 3d 120 (D. Mass. 2023) ...................................................................................5, 8

*Emp's Ret. Sys.* v. *Whole Foods Mkt., Inc.*,
905 F.3d 892 (5th Cir. 2018) ..................................................................................................4

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ..................................................................................................2

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ..................................................................................................8

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010).....................................................................................3

*In re Ceridian Corp. Secs. Litig.*,
542 F.3d 240 (8th Cir. 2008) ..................................................................................................7

*In re KBR, Inc. Sec. Litig.*,
C.A. No. H-17-1375, 2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) ......................................4

*In re Keryx Biopharms.*,
454 F. Supp. 3d 407 (D. Del. 2020).........................................................................................2

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ...................................................................................10

*In re Pilgrim's Pride Corp. Sec. Litig.*,
No. 2:08-CV-419-TJW, 2010 WL 3257369 (E.D. Tex. Aug. 17, 2010)..................................9

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)......................................................................5, 9

*In re Tesla Inc. Stockholder Derivative Litig.*,
No. 22-CV-00592, 2023 WL 6060349 (W.D. Tex. Sept. 15, 2023).........................................4

Table of Authorities
(continued)

Page

*Jacobowitz v. Range Res. Corp.*,
    596 F. Supp. 3d 659 (N.D. Tex. 2022) ...................................................................................7

*Jaroslawicz v. M&T Bank Corp.*,
    C.A. No. 15-897, 2017 WL 1197716 (D. Del. Mar. 30, 2017)..................................................2

*Kakkar v. Bellicum Pharm., Inc.*,
    2020 WL 2845279 (S.D. Tex. May 29, 2020) .........................................................................8

*Lapin v. Goldman Sachs*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006).....................................................................................5

*Magruder v. Halliburton Co.*,
    2009 WL 854656 (N.D. Tex. Mar. 31, 2009) ..........................................................................7

*Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*,
    No. MO:19-CV-217, 2021 WL 9037758 (W.D. Tex. Sept. 13, 2021)....................................10

*Oklahoma Law Enforcement Retirement System v. Papa John's Int'l, Inc.*,
    517 F. Supp. 3d 196 (S.D.N.Y. 2021)......................................................................................4

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ..................................................................................................8

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
    2024 WL 5399664 (N.D. Cal. Sept. 18, 2024) ........................................................................3

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013).....................................................................................................7

*Retail Wholesale v. Hewlett-Packard Co.*,
    845 F.3d 1268 .......................................................................................................................10

*RYH Props., LLC v. West*,
    2009 WL 10676645 (E.D. Tex. Aug. 3, 2009) ........................................................................5

*Shivangi v. Dean Witter Reynolds, Inc.*,
    825 F.2d 885 (5th Cir. 1987) ...................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................................................3, 7, 9

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
    2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ..............................................................................2

Plaintiffs' Opposition attempts to transform a grab-bag of employment issues that do not directly involve the Former Executives into securities fraud claims by pointing to generic, aspirational disclosures about company values and codes of conduct, and by relying on inapposite, out-of-District cases.[1] In doing so, Plaintiffs ignore the clear, binding law in this Circuit that mandates dismissing inactionable puffery and opinion. Plaintiffs also argue that the Merger Agreement includes a false representation because SeaSpine did not disclose that it had settled an employment action filed over five years before the Merger. But the Prospectus expressly warned investors not to rely on the representations in the Merger Agreement, the prior litigation was publicly available, and the settlement was immaterial to SeaSpine.

Plaintiffs' core allegations rely on private text messages among the Former Executives and a handful of dated or generic statements of alleged confidential witnesses. These are insufficient to plead falsity of the alleged misstatements. And Plaintiffs do not allege that the Former Executives acted with scienter. Nor do Plaintiffs plead loss causation, because they do not and cannot explain how a corrective disclosure – rather than the Former Executives' terminations – led to a decrease in stock price. Each of Plaintiffs' additional arguments lacks merit, requiring the Former Executives' dismissal.

## ARGUMENT

A.  **Plaintiffs Fail to State a Claim Against the Former Executives based on Statements Contained in the Merger Agreement (Statement Type 2)**

Plaintiffs allege that the representations in Section 3.20 of the Merger Agreement regarding SeaSpine's lack of employment misconduct, claims, or settlements constitute actionable misstatements. (AC ¶¶ 254, 274, 342.) Plaintiffs do not dispute that the Merger Agreement states

---

[1] Defined terms have the meanings set forth in the Former Executives' opening brief. (Dkt. No. 51, cited as "Mot.").) Plaintiffs' opposition (Dkt. No. 58) is cited as the "Opposition" or "Opp."

that third parties may not rely on the representations within it, or that the Prospectus explicitly stated that "Investors . . . should not rely on the representations and warranties [in the Merger Agreement]." (Ward Decl. Ex. B at § 9.09; Ward Decl., Ex. E at 117.) Plaintiffs also do not dispute that under Delaware law – the law governing the Merger Agreement (Ward Decl. Ex. B at § 9.06) – courts uniformly reject attempts to transform private, contractual representations into public statements that could form the basis for investor reliance under the federal securities laws. *See Jaroslawicz v. M&T Bank Corp.*, C.A. No. 15-897, 2017 WL 1197716, at *5 (D. Del. Mar. 30, 2017); *In re Keryx Biopharms.*, 454 F. Supp. 3d 407, 413 (D. Del. 2020) (representations in merger agreement cannot be actionable where prospectus "warns stockholders not to rely on" them).

Plaintiffs do not distinguish the facts of *Jaroslawicz*. Nor do Plaintiffs identify any Fifth Circuit or Delaware cases to the contrary. Instead, they rely on inapposite out-of-Circuit cases. (Opp. at 15-18.) Plaintiffs rely most heavily on *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008). *Glazer* affirmed dismissal of securities fraud claims arising from an explosive manufacturer's alleged misrepresentations relating to compliance with the Foreign Corrupt Practices Act in a merger agreement. While the *Glazer* court ultimately dismissed plaintiffs' claims for failure to allege scienter, it also held that references in the merger agreement to a private disclosure schedule and the proviso that the agreement "was 'not intended to ... confer upon any [p]erson other than the parties hereto any rights or remedies hereunder'" were not automatic bars to liability. *Id.* at 741. Notably, the *Glazer* court did not consider an explicit statement such as in the Prospectus here that "Investors . . . should not rely on the representations and warranties [in the Merger Agreement]." (Ward Decl. Ex. E at p. 117.) That warning is dispositive.

None of the other out-of-Circuit cases that Plaintiffs cite in support of their argument provide any additional support.  *See* Opp. at 17 (citing *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020

**BOSTJANCIC, KERAN AND VALENTINE'S REPLY IN SUPPORT OF MOTION TO DISMISS – Page 2**

WL 564222, at *9 (N.D. Ill. Feb. 5, 2020) (following *Glazer*); *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2024 WL 5399664, at *12 (N.D. Cal. Sept. 18, 2024) (applying *Glazer* in connection with alleged misstatement in underwriting agreement that company complied with certain healthcare laws, where company was engaged in systemic fraud and illegal billing); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 297 (S.D.N.Y. 2010) (considering representations in merger agreement and joint proxy without discussing whether or not the publicly filed documents contained non-reliance provisions); *Titan Report*, SEC Release No. 51283, 2005 WL 1074830, at *2 (Mar. 1, 2005) (FCPA representation at issue incorporated into and referenced in proxy statement)).

Plaintiffs also fail to allege that the purported misstatements in the Merger Agreement are material. Plaintiffs do not dispute that the Johnson Action was filed over five years before the signing of the Merger Agreement, and the settlement was announced approximately three years before. (AC ¶ 65.) Plaintiffs concede this information was "available to the public," and do not explain how the $919,000 settlement (less than 0.5% of SeaSpine's annual revenues) could possibly be material – particularly where the Merger Agreement's representations contain materiality thresholds. (*Id.*; Mot. at 6, n.3; Ward Decl., Ex. B § 3.20.)

Plaintiffs also fail to allege scienter. Plaintiffs do not plausibly allege why Valentine – the only Former Executive that signed the Merger Agreement – would misstate publicly available information. To plead scienter, the inference of fraudulent intent must be "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 334 (2007). Here, the most compelling explanation is that the Johnson Action and settlement were not disclosed in the Merger Agreement because the agreement was subject to materiality thresholds, and Valentine believed they were not material. (Mot. at 16-17.)

### B.   Plaintiffs Fail to Plead Any Other Actionable Misstatement or Omission

#### 1.   All Other Statements (Types 1, 3, 4, 5, and 6) Are Non-Actionable Generalized Statements, Puffery, Opinions and Corporate Optimism

Plaintiffs' theory that generalized statements about ethics, compliance, and corporate culture are actionable contradicts well-settled law. (Mot. at 17.) Plaintiffs argue that generalized statements of puffery are still actionable where "directly at odds" with alleged facts. (Opp. at 22, 28.) In doing so, Plaintiffs ignore the clear principle that generic statements about integrity, corporate culture, and similar matters are immaterial as a matter of law. (Mot. at 17.)

Plaintiffs fail to meaningfully distinguish controlling and relevant case law. (Mot. at 17-19.) *See Emp's Ret. Sys.* v. *Whole Foods Mkt., Inc.*, 905 F.3d 892, 901 (5th Cir. 2018) (generalized statements about "commitments to transparency and quality" are immaterial even if false because "they do not alter a reasonable investor's assessment of the company's prospects"); *In re KBR, Inc. Sec. Litig.*, C.A. No. H-17-1375, 2018 WL 4208681, at *5-6 (S.D. Tex. Aug. 31, 2018) (statements about "reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.' . . . 'Such a code expresses opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations'"); *Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F. Supp. 3d 196, 208 (S.D.N.Y. 2021) (Code of Ethics, which promised a harassment-free workplace, was "vague, broad, and merely aspirational," and not actionable); *In re Tesla Inc. S'holder Deriv. Litig.*, No. 22-CV-00592, 2023 WL 6060349, at *5 (W.D. Tex. Sept. 15, 2023) (dismissing as inactionable claims based on statement that Tesla "designed [its] workplace and policies to provide all employees with a respectful and safe working environment by not tolerating any discrimination, harassment, retaliation, or any other mistreatment at work . . ." despite plaintiffs' argument that the statements "'misrepresented the true state of affairs

at [Tesla] and omitted material facts concerning the rampant and ongoing discrimination and retaliation'").

Instead, Plaintiffs rely on inapposite out-of-District cases. (*See* Opp. at 22-23 (citing, *e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, *12 (S.D.N.Y. Nov. 26, 2018) (challenged statements were "made in response to direct questions about Signet's credit portfolio, and, as Plaintiff alleges, in an effort to reassure the investing public"); *City of Fort Lauderdale Police & Firefighters' Retirement System v. Pegasystems, Inc.*, 683 F. Supp. 3d 120, 133-34 (D. Mass. 2023) (alleged misstatement actionable where "Pega assured investors in its Code of Conduct that it would: *Never* use illegal or questionable means to acquire a competitor's trade secrets or other confidential information" but senior executives fostered a conspiracy to do just that (emphasis added)); *Lapin v. Goldman Sachs*, 506 F. Supp. 2d 221, 240-41 (S.D.N.Y. 2006) (alleging "Goldman knew about the pervasive conflicts and the effect they had on its research reports and buy recommendations, allegedly one of its core competencies, yet, they allegedly failed to disclose such material information to its investors").) Here, the law is clear that the alleged misstatements in Statement Types 1, 3, 4, 5, and 6 are not actionable.

Moreover, certain of those alleged misstatements are opinions or forward-looking statements protected by the PSLRA safe harbor. (Mot. at 20.) Statements concerning anticipated cultural alignment, integration success, and leadership continuity – such as "I believe John is well positioned to help lead us through the successful integration of the two companies" or the "complementary cultures" – are forward-looking, not representations of existing fact. (Mot. at 20; AC, ¶¶ 92, 163, 173, 256, 260, 262, 337.) Plaintiffs cite *RYH Properties* to argue otherwise, but the statements there described events that had allegedly already occurred, 2009 WL 10676645, at

*11 (E.D. Tex. Aug. 3, 2009), unlike the future-oriented statements here. (*See* Opp. at 28.)[2]

Even if Statement Types 1, 3, 4, 5, and 6 were not inactionable and immaterial as a matter of law, Plaintiffs have not adequately pled that they were false or misleading when made. For example, Statement Type 1 – the "complementary cultures" language – was one of over thirty reasons Orthofix's Board considered recommending the Merger. Plaintiffs plead no facts indicating that Orthofix's Board did not genuinely consider that factor, or how the Former Executives would be privy to the Orthofix Board's considerations. Other statements are subjective and forward-looking, or statements of opinion – such as the leadership team being based on merit (Type 3) or that certain executives would foster accountability (Type 4). Plaintiffs offer no plausible allegations showing that the speakers did not honestly believe them or that these statements were contradicted by contemporaneous facts. (Mot. at 17-20.)

Moreover, Plaintiffs' arguments regarding the Former Executives' conduct fall far short. For example, Plaintiffs allege that the Former Executives texted each other inappropriate *private* jokes, which they affirmatively did not share with others at SeaSpine or Orthofix. (Mot. at 14, 20, 24.) Further, the allegation that CW 4 saw Valentine with "his hands up the shirt of an EA" outside of the office is an alleged isolated incident that is not described as non-consensual or linked to any alleged misrepresentation. (AC ¶ 107.) And the allegation that Keran told an employee that her pay was "below-market" does not in any way indicate complicity with discriminatory practices, but more plausibly suggests that Keran was helping her advocate for a pay raise. (AC ¶ 67.)

Plaintiffs' confidential witness (CW) allegations do not cure these defects. Plaintiffs rely heavily on *Six Flags* for the proposition that CWs should not be discounted heavily when described

---

[2] Plaintiffs also rely on *Brody v. Zix Corp.*, 2006 WL 2739352, at *5 (N.D. Tex. Sept. 26, 2006) to preclude application of the safe harbor. (Opp. at 28.) *Brody* involved specific allegations that internal results contradicted financial projections. Plaintiffs allege no such contemporaneous contradiction here, or that the Former Executives had knowledge that the forward-looking statements were false. (*See* Opp. at 28.)

with sufficient particularity to support reliability. (Opp. at 30-32.) By contrast, the CWs here lack *any* relevant knowledge of events or conduct close in time to the Merger.[3] Of the nine CWs, six left SeaSpine more than a year before the Merger Agreement, rendering their observations irrelevant to the issue of the claimed discriminatory culture of SeaSpine at the time of the Merger. (Mot. at 21.) *See In re Ceridian Corp. Secs. Litig.*, 542 F.3d 240, 247-48 (8th Cir. 2008) (discounting confidential witness who left the company well before the start of the class period); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 244-45 (3d Cir. 2013) (temporal disconnect between confidential witness and relevant events). The remaining three CWs do not link their accounts to any challenged statement or the Former Executives' conduct or knowledge. (Mot. at 21-22.)

Plaintiffs also conflate Orthofix's post-hoc termination rationale of the Former Executives with evidence of pre-Merger falsity. But courts reject this kind of hindsight pleading. *See Magruder v. Halliburton Co.,* 2009 WL 854656, at *22 (N.D. Tex. Mar. 31, 2009) (finding "vague allegations of knowledge and 'fraud by hindsight'" insufficient under the PSLRA); *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 674 (N.D. Tex. 2022) (finding defendant's settlement with regulatory agency and "subsequent payment of a relatively minor civil penalty d[id] not render false or misleading its prior statements"). None of Plaintiffs' cited conduct pleads that any challenged statement was false or misleading when made.

### 2.    Plaintiffs Fail to Plead a Strong Inference of Scienter

Section 10(b) requires pleading a strong inference of scienter, which "must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 314, 324. Here, the far more compelling inference is that the Former Executives believed the Statement Types 1, 3, 4, 5 and 6 – about culture, leadership, and values – were true

---

[3] Plaintiffs' reliance on Glassdoor posts fails for similar reasons. (AC ¶¶ 69-73; Mot. at 21.)

when made, and did not consider their statements to be false or misleading.

First, Plaintiffs argue that scienter is established simply because the Former Executives "undoubtedly knew about their own behavior." (Opp. at 34.) But "knowledge of omitted facts does not itself establish scienter." *Shivangi v. Dean Witter Reynolds, Inc*., 825 F.2d 885, 889 (5th Cir. 1987). Rather, Plaintiffs must allege that each Former Executive "intended to deceive [investors] by failing to disclose" those facts. *Id*. Plaintiffs cite no case holding that knowledge of personal conduct – without pleading knowledge of a duty to disclose that conduct – satisfies the PSLRA's heightened scienter requirement.

The Fifth Circuit has consistently rejected efforts to equate knowledge of a fact with an intent to deceive. *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003). The law requires more than "knowledge" of conduct – it requires facts suggesting the speaker knew the statements were false and intended to mislead investors. (Mot. at 24-25.) Here, Plaintiffs do not adequately plead that any Former Executive believed that the challenged statements about workplace "culture," "integration," or "leadership" were false when made or that there was a duty to disclose their private text messages or alleged conduct.

Plaintiffs ask the Court to assume that because the Former Executives had knowledge of their own conduct, any positive statement about culture or leadership was necessarily fraudulent. That is not the law. *See Kakkar v. Bellicum Pharm., Inc*., 2020 WL 2845279, at *4 (S.D. Tex. May 29, 2020) ("Plaintiff erroneously conflates 'knowledge' with 'an intent to deceive, manipulate, or defraud or severe recklessness.'"). The cases Plaintiffs cite do not hold otherwise. *See* Opp at 34-35 (citing, *e.g.*, *Owens v. Jastrow*, 789 F.3d 529 (5th Cir. 2015) (plaintiffs failed to plead facts showing scienter); *City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, 683 F. Supp. 3d 120, 127-32 (D. Mass. 2023) (CEO orchestrated multi-year "corporate espionage"

operation); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *18 (S.D.N.Y. Nov. 26, 2018) (defendants allegedly repeatedly briefed on litigation mischaracterized in disclosures)).

Second, Plaintiffs argue the Former Executives' terminations "for cause" support scienter, citing *Kaltman* and *Rent-A-Center*, which involved terminations directly linked to accounting misconduct or fraud. (Opp. at 35-36.) Here, by contrast, Plaintiffs allege only generalized "workplace issues and inappropriate conduct" and private text messages as the basis for the terminations. (AC ¶ 234.)

Third, Plaintiffs argue that they alleged motive based on the Former Executives' desire to "see the Merger succeed" or maintain employment. (Opp. at 45.) Such generic allegations are insufficient. Incentives to close a deal, secure a merger, or protect one's job are "universal to corporate executives" and "do nothing to bolster the allegation of scienter." *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 2:08-CV-419-TJW, 2010 WL 3257369, at *12 (E.D. Tex. Aug. 17, 2010).

At best, Plaintiffs allege that the Former Executives made generic cultural and integration statements while engaged in some allegedly inappropriate personal conduct that later became the subject of internal scrutiny. But even accepting that theory as true, the more cogent and compelling inference is that the Former Executives did not subjectively believe the statements were false or inconsistent with their behavior and had no intent to mislead investors. *Tellabs*, 551 U.S. at 314. Consistent with this inference, the Complaint itself alleges that the Former Executives dispute the grounds for their terminations and filed suit for defamation. (AC ¶ 206.)

## C. Plaintiffs Fail to Plead Loss Causation

The Exchange Act claims must be dismissed for the independent reason that Plaintiffs do not adequately allege loss causation, *i.e.*, that the market reacted to a disclosure revealing the falsity of a prior representation. *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008). That standard is not met here. (Mot. at 26.)

Plaintiffs rely on Orthofix's press release announcing the Former Executives' termination "for cause" based on "inappropriate and offensive conduct." (AC ¶ 231.) But the announcement did not repudiate any prior statement or reveal that any earlier statement was false when made. In fact, that disclosure did not state that the "inappropriate and offensive conduct" was directed toward other employees or rendered the prior public disclosures false or misleading at all.

Plaintiffs argue the terminations imply prior statements must have been false. But courts routinely find no loss causation where, like here, the alleged corrective disclosure is "entirely disconnected from the alleged misrepresentation." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 864-65 (S.D. Tex. 2016); *see also Retail Wholesale v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 n.3 (9th Cir. 2017) (disclosure regarding executive termination reveals "ethics and compliance policies worked"). Since Plaintiffs allege the market reaction stemmed from leadership disruption, not revelation of fraud, they cannot plead loss causation. (*See* AC ¶ 236.)

### D.       Plaintiffs Fail to Plead Claims Under the Securities Act or for Control Liability

Plaintiffs' Securities Act claims fail for the same reasons as their Exchange Act claims: they do not identify any actionable misstatement or omission. (Mot. at 28.) And Plaintiffs cannot evade Rule 9(b) pleading standards by simply "disavow[ing]" fraud for Securities Act claims based upon on the same facts as their fraud claims. *See Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*, No. MO:19-CV-217, 2021 WL 9037758, at *13 (W.D. Tex. Sept. 13, 2021).

Plaintiffs do not dispute that their control person claims also must fail if this Court holds that they have failed to plead a primary violation. (Mot. at 28-29; Opp. at 45.)

### CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Former Executives request that the Court dismiss the Complaint against them with prejudice.

Dated: July 9, 2025

                                       Respectfully submitted,

                                       */s/ Adrienne Ward*

| | |
|---|---|
| Jennifer Doan | Adrienne Ward (admitted *pro hac vice*) |
| Texas Bar No. 08809050 | N.Y. State Bar No. 2689461 |
| Darby V. Doan | Kyle Bisceglie (admitted *pro hac vice*) |
| Texas Bar No. 00793622 | N.Y. State Bar No. 2702124 |
| Mariah L. Hornok | Kerrin Klein (admitted *pro hac vice*) |
| Texas Bar No. 24113074 | N.Y. State Bar No.4829644 |
| HALTOM & DOAN | Giovanna Crivello (admitted *pro hac vice*) |
| 2900 St. Michael Drive, Suite 500 | N.Y. State Bar No. 5905559 |
| Texarkana, Texas 75503 | OLSHAN FROME WOLOSKY LLP |
| Telephone: (903) 255-1000 | 1325 Avenue of the Americas |
| Email: jdoan@haltomdoan.com | New York, New York 10019 |
| Email: ddoan@haltomdoan.com | Tel: (212) 451-2300 |
| Email: mhornok@haltomdoan.com | kbisceglie@olshanlaw.com |
| | award@olshanlaw.com |
| | kklein@olshanlaw.com |
| | gcrivello@olshanlaw.com |

*Attorneys for Defendants John Bostjancic, Patrick Keran, and Keith Valentine*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan