**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| *In re Orthofix Medical, Inc. Securities Litigation* | No. 2:24-cv-00690-JRG<br><br>CLASS ACTION |

**PLAINTIFFS' POST-HEARING SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION
TO DEFENDANTS'
MOTIONS TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT**

Lead Plaintiff SEPTA[1] respectfully submits this post-hearing supplemental brief as ordered on materiality, scienter, and loss causation.[2]

**I.    The Complaint Adequately Alleges Actionable Material Misrepresentations.**

*A. The SeaSpine Merger Representations Are Actionable.* Before the vote on the Merger, Defendants instructed investors to "read the Merger Agreement carefully and in its entirety." ¶¶ 164, 69; *see also* ¶¶ 165-66, 70-71. In this context and from the perspective of a reasonable investor, materiality is easily satisfied for the SeaSpine Merger Representations: the Merger was a "very significant event for the company", and Defendants should have anticipated "intense investor interest in the details" of the Merger Agreement. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 741 (9th Cir. 2008). Courts across the country have reached similar conclusions, even where there was disclaimer language. *See* Opp. 16-17 & n.7 (describing cases); *see also Rubinstein v. Collins*, 20 F.3d 160, 167-68 (5th Cir. 1994) (rejecting the notion that cautionary language can serve as a *per se* bar to liability). In addition, there is no serious dispute that the three SeaSpine Merger Representations were false. Opp. 15.

*B. The Pre-Merger and Post-Merger Statements are Material and False.* It is "well-established" in the Fifth Circuit that materiality presents "a question of law and fact" "usually left for the jury." *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004). Materiality must be assessed "in light of the surrounding circumstances," and not "judged in the abstract." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993). Here, the Pre-Merger Statements touted the culture of the two companies and the merit of the executive leadership to induce shareholders to approve the Merger. *See, e.g.*, ¶¶ 82-93, 161-63, 259, 261. And the Post-Merger Statements assured investors that the combined Company was being governed in accordance with robust compliance guidelines and codes of conduct inherited from the

---

[1] Capitalized and defined terms have the same meanings as in the First Amended Consolidated Complaint ("FAC") (ECF No. 49) and Opposition to Defendants' Motions to Dismiss ("Opposition" or Opp.") (ECF No. 58). References to "¶__" are FAC citations.

[2] Lead Plaintiff incorporates by reference its arguments in the Opposition and from oral argument.

pre-Merger entities, further touting trust and reliability. *See, e.g.*, ¶¶ 210-13. Thus, there is a "substantial likelihood that a reasonable investor would [have] consider[ed] [the statements] to have significantly altered the total mix of information." *Kapps*, 379 F.3d at 216; *see* Opp. 21 & n.12 (citing cases). Materiality and falsity are also confirmed by the fact that Orthofix's reckless due diligence[3] and oversight led to the need to fire the Terminated Executives for "repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture." ¶ 231. This disclosure revealed the truth and caused investors to divest from the Company, resulting in an immediate stock price drop. *See infra* § III.

Rather than address the context of each statement, which is critical, Defendants paint them all as overly general or mere "puffery" and thus immaterial. These statements are not puffery, Opp. 22-24, and even if they were, "[t]he Fifth Circuit does not have a *per se* rule for dismissing puffery," *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421609, at *7-8 (S.D. Tex. Apr. 13, 2021); *see also United States v. Skilling*, 554 F.3d 529, 552 (5th Cir. 2009). Thus, none of Defendants' cited cases negates allegations of materiality at the pleading stage. *See* Opp. 24-25 & n.15 (addressing Defendants' cases). *Whole Foods* does not change that result. In *Whole Foods*, the plaintiff alleged that defendants made "various proclamations" relating to "high standards for transparency, quality, and corporate responsibility" that obscured their weights-and-measures scandal. *Emp's Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 897 (5th Cir. 2018). The Fifth Circuit affirmed that these statements were immaterial "generalized positive

---

[3] Defendants seized on a slide from Plaintiffs' hearing presentation that describes the due diligence as "inadequate" and states that Orthofix did not exercise "reasonable due care." A lack of reasonable care is the standard for a Section 11 claim. The slide also states Orthofix missed "red flags," which the FAC alleges at length was at least severe recklessness, an element of a Section 10(b) claim.

statements." *Id.* at 901.[4] But unlike the *Whole Foods* statements,[5] here, the Pre- and Post-Merger State-ments were sufficiently "specific" considering the "context" in which they were made. *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 220 (5th Cir. 2023).

The Pre-Merger Statements were also false, since Plaintiffs allege, for example, facts showing that SeaSpine did not have a "strong performance-based culture." Opp. 27. Similarly, the Post-Merger State-ments were "directly at odds with the conduct alleged." *In re Signet Jewelers Ltd Sec. Litig.*, 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018); Opp. 28-29. Defendants' multiple culture and compliance statements here are like the compliance-related statements in *Amedisys* that were found to be material.[6] In addition, the statements' falsity is confirmed by the fact that Orthofix installed the Terminated Executives to lead the Company: if Orthofix truly "implement[ed] robust risk management programs," as it said (a specific, factual statement), the Terminated Executives—who had a history of misconduct in the work-place—would not have become officers of the combined Company. ¶ 99.

## II.    The Complaint Adequately Alleges a Strong Inference of Scienter.

Applying the Fifth Circuit's law for assessing scienter at the pleading stage (i.e., accepting all factual allegations, holistically evaluating the allegations, and considering plausible opposing inferences) there is a strong inference that Defendants made the alleged actionable statements with the "intent to deceive, manipulate, or defraud or severe recklessness." *Six Flags*, 58 F.4th at 214; *see* Opp. 33-41. Plain-tiffs allege that the Terminated Executives made the SeaSpine Merger Representations and Pre- *and* Post-Merger Statements knowingly or at least with severe recklessness because their misconduct was their own

---

[4] The statements included generalized assertions that Whole Foods "continu[ed] to raise the bar, "seek[s] to be . . . deeply responsible," and other vague statements. *Whole Foods*, 905 F.3d at 897. The court also rejected the argument that the statements were not puffery because Whole Foods had built its "brand" around high ethical standards, *id.* at 902, an argument that Plaintiffs do not advance here.

[5] Courts in this circuit and elsewhere have found statements that could otherwise be regarded as corporate optimism or puffery to be material based on context. *See* Opp. 22-24 & n.13 (describing cases).

[6] *See Bach v. Amedisys, Inc.*, 2016 WL 4443177, at *10 (M.D. La. Aug. 19, 2016) (statement that compliance program was "central to everything we do" was actionable at a time where there was public attention to potential accounting and billing issues at Amedisys).

3

self-directed acts. The Orthofix Defendants concede this fact. Opp. 34. Given their control of SeaSpine and then Orthofix, the Terminated Executives' misconduct was systemic and longstanding, which supports scienter. ¶¶ 280-285. The "for cause" terminations also support a strong inference of scienter for *multiple* violations of the Code of Conduct. ¶¶ 35-36, 98.[7] In addition, the officer and director Orthofix Defendants (pre- and post- Merger) were at least severely reckless in not identifying the toxic work environment the Terminated Executives fostered. ¶¶ 40-41.

### III.    The Complaint Adequately Alleges Loss Causation.

Since *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005), the Fifth Circuit has spoken on loss causation in *Lormand v. US Unwired Inc.*, 565 F.3d 228 (5th Cir. 2009), *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676 (5th Cir. 2014), *Pub. Emps. Ret. Sys. of Miss., P. R. Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014) (Gilstrap, J.), and *Whole Foods*, 905 F.3d at 892. Each case supports a finding that Plaintiffs adequately allege loss causation at this stage. Specifically, Plaintiffs allege that the corrective disclosure was the first time that Orthofix disclosed that the Terminated Executives engaged in "repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture" warranting termination "for cause," which was thus directly connected to the alleged misstatements. ¶¶ 10, 270-79; *see also* Opp. 41-43. Under *Lormand*, this is enough: Plaintiffs are required only to plead a plausible inference of loss causation that is equally or more plausible than competing inferences. 565 F.3d at 257, 266-67.

Defendants' attempt to "sever" the "logical link" between the corrective disclosure and misstatements should be rejected for the same reason it was in *Spitzberg*. 758 F.3d at 688 (curative disclosure that well had been abandoned was "logical[ly] link[ed]" to earlier statements regarding the well's resource potential, even though Defendants suggested "possibilities" that the well may "have been abandoned anyway"). Here, revelation of the misconduct revealed the falsity of the misstatements regarding the

---

[7] The Terminated Executives' scienter is imputed to SeaSpine and Orthofix. ¶¶ 49-52; Opp. 37-40.

4

selection of the leadership team and Orthofix's compliance program and Code of Conduct requirements. ¶ 271. Defendants' contrary argument is illogical and belied by investors' reaction to the "relevant truth," since there was an immediate stock drop on unusually high trading volume as investors sold. ¶¶ 11, 272. Defendants argue that the stock drop was caused by concern over what would happen next, but that is directly linked to the terminations: without the revelation of the misconduct, there would have been no terminations and thus no concern about the future.

The alleged corrective disclosure is also consistent with *Amedisys*, which instructed that loss causation can be demonstrated by: identifying the corrective disclosure; showing that the stock price dropped soon afterwards; and eliminating other possible reasons for the drop, so that the factfinder can infer that it is more probable than not that the corrective disclosure caused at least a "substantial" amount of the drop. 769 F.3d at 321. In *Amedisys*, loss causation was established because the stock price dropped in response to misconduct revealing the falsity of Amedisys's compliance statements. 769 F.3d at 318, 325. Similarly, here, disclosure of the misconduct revealed the falsity of the misstatements. No other plausible causes are argued: no other company or macroeconomic news occurred on the disclosure day. ¶ 279. Further analysis of the connection between the corrective disclosure and the misstatements can be pursued at a "later stage in litigation." *Amedisys*, 769 F.3d at 325-26.

*Whole Foods* is distinguishable, since the alleged corrective disclosure there did not reveal any new information. *Whole Foods*, 905 F.3d at 904. In addition, the plaintiffs alleged that Whole Foods' stock dropped the day after it released information of a sales growth slowdown, but did not link the misrepresentations (overstated revenues) to the disclosure (disappointing sales). *Id.* By contrast, here, the disclosure was certainly "relevant" to the alleged misrepresentations. *Lormand*, 565 F.3d at 258.

## IV.   CONCLUSION

Defendants' Motions to Dismiss should be denied.

Dated: March 2, 2026

Respectfully submitted,

By: */s/ Christina D. Saler w/ permission*
*William E. Dvis, III*
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
Steven J. Toll (admitted *pro hac vice*)
Jan Messerschmidt (admitted *pro hac vice*)
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

Christina D. Saler (admitted *pro hac vice*)
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5707
Fax: (267) 479-5701
csaler@cohenmilstein.com

Alexandra Gray (admitted *pro hac vice*)
88 Pine St., 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
agray@cohenmilstein.com

*Attorneys for Lead Plaintiff SEPTA and Lead
Counsel for the Class*

**DAVIS FIRM PC**
William E. Davis, III (TX No. 24047416)
Rudolph "Rudy" Fink IV (TX No. 24082997)
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Tel: (903) 230-9090
Fax: (903) 230-9661
bdavis@davisfirm.com
rfink@davisfirm.com

*Local Counsel for Lead Plaintiff SEPTA and the
Class*

**GIRARD SHARP LLP**
Adam E. Polk (admitted *pro hac vice*)

6

601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com

**THE HALL FIRM, LTD**
David W. Hall (*pro hac vice forthcoming*)
Four Embarcadero Center, Suite 1200
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
dhall@hallfirmltd.com

*Attorneys for Mark Bonta*

## CERTIFICATE OF SERVICE

The foregoing document has been served on all counsel of record who have consented to electronic service under the Local Rules on this 2nd day of March, 2026.


 */s/ William E. Davis, III*
William E. Davis, III

7