**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  | x |  |
|---|---|---|
|  | : |  |
|  | : | No. 2:24-cv-00690-JRG |
|  | : |  |
| IN RE ORTHOFIX MEDICAL INC. SEC. LITIG. | : | Honorable Rodney Gilstrap |
|  | : | District Court Judge |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | x |  |

**SUPPLEMENTAL BRIEF BY DEFENDANTS BOSTJANCIC, KERAN AND
VALENTINE IN SUPPORT OF MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED COMPLAINT**

Jennifer Doan
Texas Bar No. 08809050
Darby V. Doan
Texas Bar No. 00793622
Mariah L. Hornok
Texas Bar No. 24113074
HALTOM & DOAN
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Telephone: (903) 255-1000
Email: jdoan@haltomdoan.com
Email: ddoan@haltomdoan.com
Email: mhornok@haltomdoan.com

Adrienne Ward (admitted *pro hac vice*)
N.Y. State Bar No. 2689461
Kyle Bisceglie (admitted *pro hac vice*)
N.Y. State Bar No. 2702124
Kerrin Klein (admitted *pro hac vice*)
N.Y. State Bar No.4829644
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
award@olshanlaw.com
kbisceglie@olshanlaw.com
kklein@olshanlaw.com

*Attorneys for Defendants John Bostjancic, Patrick Keran, and Keith Valentine*

This brief addresses Plaintiffs' failure to plead the Former Executives' scienter and loss causation under the standards set by the Fifth Circuit.[1] The Former Executives join in the arguments made by the Orthofix Defendants.

## I.    Plaintiffs Do Not Plead the Former Executives' Scienter

To analyze whether Plaintiffs have pled a strong inference of scienter, "[a] district court may best make sense of scienter allegations by first looking to the contribution of each individual allegation to a strong inference of scienter, especially in a complicated case." *Owens v. Jastrow,* 789 F.3d 529, 537 (5th Cir 2015). Unless a "single allegation, standing alone, create[s] a strong inference," the court must take "a holistic look at all the scienter allegations." *Id.* Under this standard, the Fifth Circuit affirmed dismissal in *Owens*, *Municipal Employees' Retirement System Of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424 (5th Cir. 2019), and *Neiman v. Bulmahn*, 854 F.3d 741 (5th Cir. 2017). Alone or under a holistic view, Plaintiffs have not pled scienter.

### A.   Motive

Plaintiffs have not demonstrated that the Former Executives had motive to commit fraud. *See* Mot. 25. When there is no obvious motive, "the strength of [the] circumstantial evidence of scienter must be correspondingly greater." *Neiman*, 854 F.3d at 748.

### B.   The Pre-Merger Period

Plaintiffs argue scienter based on the Former Executives' knowledge of their own conduct, which they claim is corroborated by the allegations in the *Johnson* case and the CWs.

First, allegations in the *Johnson* case and CW 3, which predate the Merger by six years, cannot support scienter. At argument, Plaintiffs admitted reliance on the *Johnson* complaint to plead scienter and asserted that the use of "200 different job titles for just 300 employees" was a

---

[1] Defined terms have the meanings set forth in the Former Executives' opening brief. (Dkt. No. 51, cited as "Mot".)

"red flag." Tr. 49:13-14; 52:8-11. That allegation and many more come verbatim from the *Johnson* complaint or CW 3. *See, e.g.,* AC ¶¶ 64, 103, 118, 120-122, 124-131, 137 and 142. "[B]ackward-looking statements about events that took place outside of the Class Period … cannot establish scienter." *Pier 1*, 935 F.3d at 432-33.

The allegations of CWs 1, 2, 4 and 5, who worked at SeaSpine between 2020 and 2022, does not support the Former Executives' scienter. The issue is not job title, but that the CWs relate few interactions with the Former Executives, requiring the Court to "discount" the allegations. *Id.* at 434. In addition, if the CW statements do not tie to the alleged fraud, they will not "necessarily lead to the conclusion" that a defendant "'intentionally concealed that fact.'" *Id.*

CWs 1 and 5 describe no interactions with the Former Executives. *See* AC ¶¶ 102, 116.

CW 2, who worked at SeaSpine for a year and a half, leaving in 2021, claims that she reported bullying by Executive Assistants to Keran and Bostanjic. *See id.* at ¶¶ 149-152. But these allegations, if accepted as true, cannot tie to the alleged fraud because they are not a "Misconduct Allegation" against an "officer, director, manager or supervisory-level employee" that required disclosure to Orthofix under the Merger Agreement. Mot. Ex. B at § 3.20. CW 4 claims that she saw Valentine touch an Executive Assistant at an event. *Id.* at ¶¶ 106-110. If true, that was an isolated event over two years before the Merger, ignores plausible explanations and does not represent severe and systemic misconduct. CW 4 also describes dissatisfaction with her work on the remedial plan that was part of the *Johnson* settlement. *Id.* at ¶ 135. But Fifth Circuit precedent requires consideration of the fact that she worked at SeaSpine for under five months and left before the plan was implemented. Without actual knowledge of what final plan was implemented, CW 4s statements about her disagreement with the process cannot tie to any alleged fraud in pre-Merger statements.

Second, Plaintiffs argue they have pled scienter because the Former Executives were aware of the *Johnson* litigation. *Id.* at ¶ 284. But that requires assuming that SeaSpine did not disclose the *Johnson* litigation to Orthofix, an allegation that has not been pled with particularity and ignores Plaintiffs' concession that SeaSpine had previously disclosed the lawsuit, Tr. 58:15-18; AC ¶ 62, and the likelihood that SeaSpine listed it on a disclosure schedule. ECF 52-3 at 33.

### C.  The Post-Merger Period

The only allegation to support the Former Executives' post-Merger scienter come from the *O'Connor* complaint. AC ¶ 67-68, 127, 203, 285. At oral argument, Plaintiffs' counsel suggested that the remedial actions taken in the *Johnson* settlement had not happened. Tr. 49:15-16. The *O'Connor* complaint demonstrates otherwise. She alleged that "Keran informed her that the SeaSpine HR team had conducted a compensation benchmarking exercise and determined that O'Connor's bonus target was below-market." AC ¶ 67. This allegation strongly supports both that SeaSpine was carrying out the remedial plan (the benchmarking exercise) and Keran was trying to assist O'Connor (informing that her pay was below market), not fostering pay inequity. O'Connor also alleged that she complained about her pay and was retaliated against, but this was *after* the Former Executives were terminated and the class period had ended, and therefore cannot support scienter against any Defendant, including the Former Executives. *Id.* at ¶ 205.

### D.  Terminations

Plaintiffs also seek to impute scienter based on Orthofix's termination of the Former Executives. Plaintiffs' authorities involved core public company reporting requirements. For example in *Kaltman v. Key Energy Servs., Inc.,* 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006), the court found a strong inference of an executive's scienter where that executive was terminated "for cause" for his role in making misstatements to shareholders (*i.e.*, overstating the company's

financials), together with other facts that supported scienter, including that one or more years of financial statements required restatement, the company wrote down 22% of its fixed assets, the executive had certified the financial statements, the company still had not filed restatements two years later and plaintiffs identified inaccuracies in the financial statements and failures to follow GAAP. The allegations here are readily distinguishable and viewed separately or holistically do not support scienter, most importantly because the terminations were unrelated to any alleged fraud on shareholders.

## II.    Plaintiffs Have Not Pled Loss Causation

As the Court noted during argument, Tr. 25:22-26:7, 33:17-34:8, *Whole Foods* establishes a three-part test for how "plaintiffs can show loss causation":

> (1) identifying a "corrective disclosure" … ; (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a "substantial" amount of price drop.

*Emps. Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 903-04 (5th Cir. 2018) (*"Whole Foods"*). Here, Plaintiffs fall far short of pleading elements (1) and (3). The stock price did not decline because Plaintiffs' alleged "corrective disclosures" in fact revealed that any of the challenged statements were false (element (1)). Rather, per element (3), the stock drop "occurred because the market feared that [the firings] portended a period of instability and discord," which is a loss outside the scope of Section 10(b). *Whole Foods*, 477 F.3d 162, 188 (4th Cir. 2007); *see* AC ¶¶ 273, 275-77.

Two counterfactuals show why the challenged statements did not cause the stock price decline. *First*, even if Orthofix made no public statements about its conduct code, for example, the Board's decision to fire the Former Executives for cause would have remained unchanged and the

4

market would have reacted the same way because, as alleged, the market was "concern[ed] about the sudden change in leadership impacting" the business going forward. AC ¶ 236. As in *Whole Foods*, Plaintiffs "would have suffered the exact same harm regardless of" anything Defendants allegedly misrepresented. 905 F.3d at 905. *Second*, if the Former Executives left for reasons unrelated to their personal conduct—*e.g.*, they retired, went to a competitor or resigned unexpectedly—the stock price reaction also would have been the same. The stock price declined because they left the Company abruptly, not because the market learned that an earlier statement was untrue. Although their firing was tangentially related to the challenged statements' subject (*i.e.*, integrity), "[t]o 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).

Dated: March 2, 2026

Respectfully submitted,

*/s/ Adrienne Ward*

| | |
|---|---|
| Jennifer Doan | Adrienne Ward (admitted *pro hac vice*) |
| Texas Bar No. 08809050 | N.Y. State Bar No. 2689461 |
| Darby V. Doan | Kyle Bisceglie (admitted *pro hac vice*) |
| Texas Bar No. 00793622 | N.Y. State Bar No. 2702124 |
| Mariah L. Hornok | Kerrin Klein (admitted *pro hac vice*) |
| Texas Bar No. 24113074 | N.Y. State Bar No.4829644 |
| HALTOM & DOAN | OLSHAN FROME WOLOSKY LLP |
| 2900 St. Michael Drive, Suite 500 | 1325 Avenue of the Americas |
| Texarkana, Texas 75503 | New York, New York 10019 |
| Telephone: (903) 255-1000 | Tel: (212) 451-2300 |
| Email: jdoan@haltomdoan.com | kbisceglie@olshanlaw.com |
| Email: ddoan@haltomdoan.com | award@olshanlaw.com |
| Email: mhornok@haltomdoan.com | kklein@olshanlaw.com |

*Attorneys for Defendants John Bostjancic, Patrick Keran, and Keith Valentine*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Jennifer H. Doan*

Jennifer H. Doan

6