**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| *In re Orthofix Medical Inc. Sec. Litig.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:24-CV-00690-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: (1) Orthofix, SeaSpine, and Certain Individual Defendants' Motion to Dismiss the First Amended Consolidated Complaint, and (2) Defendants Bostjancic, Keran, and Valentine's Motion to Dismiss the First Amended Consolidated Complaint (the "Motions to Dismiss"). (Dkt. Nos. 50, 51.) The Court takes up the Motions to Dismiss together due to the overlapping subject matter and arguments, as well as the fact that the lead plaintiff and proposed class ("Plaintiffs") responded to the Motions to Dismiss in a single omnibus response. (Dkt. No. 58.) Having considered the Motions, the Court finds that they should be and hereby are **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.    **BACKGROUND**

The initial complaint in this suit was filed by Mr. Matthew Bernal against Orthofix Medical Inc. ("Orthofix"), Mr. Jon C. Serbousek, Mr. Keith Valentine, Mr. John Bostjancic, and Mr. Patrick Keran on August 21, 2024. (Dkt. No. 1.) The Court consolidated another case with a similar pool of defendants (Civil Action No. 2:24-cv-00979-JRG) into the above-captioned case on December 11, 2024. (Dkt. No. 35.) The current Plaintiffs filed the First Amended Complaint (the "FAC") on April 17, 2025. (Dkt. No. 49.) The Motions to Dismiss both followed on May 19, 2025. (Dkt. Nos. 50, 51.) The Court held a hearing on the Motions to Dismiss on February 18, 2026. (Dkt. No. 77.)

### A.  The Parties

Plaintiffs bring this suit against many groups of defendants. The Court adopts the categories of defendants defined by Plaintiffs in the FAC and set out below. All together, the parties summarized below are referred to as "Defendants."

The FAC defines the "Exchange Act Defendants" as Defendants Orthofix, SeaSpine Holdings Corp. ("SeaSpine"), and the Individual Exchange Act Defendants. The "Individual Exchange Act Defendants" are in turn comprised of the Legacy Orthofix Officer and Director Defendants, the Orthofix Post-Merger Director Defendants, and the Terminated Executive Defendants. The FAC clarifies that the "Legacy Orthofix Officer and Director Defendants" are Mr. Jon C. Serbousek, Mr. Douglas C. Rice, Ms. Catherine M. Burzik, Mr. Wayne Burris, Mr. Jason M. Hannon, Mr. James F. Hinrichs, Ms. Lilly Marks, Mr. Michael E. Paolucci, Mr. John E. Sicard, Mr. Thomas A. West, and Ms. Kimberley A. Elting. The "Orthofix Post-Merger Director Defendants" are Ms. Burzik, Mr. Hannon, Mr. Hinrichs, Mr. Paolucci, Mr. Serbousek, and the SeaSpine-Orthofix Director Defendants. The "SeaSpine-Orthofix Director Defendants" are comprised of Mr. Stuart Essig, Mr. John Henneman, III, and Ms. Shweta Singh Maniar. The "Securities Act Defendants" are Orthofix, SeaSpine, and the Signer Defendants. The "Signer Defendants" are the individuals who signed the offering documents in connection with the Orthofix-SeaSpine merger—the Legacy Orthofix Officer and Director Defendants, Mr. Keith Valentine, and Mr. Patrick Keran. Finally, the "Terminated Executive Defendants" are Mr. Valentine, Mr. Keran, and Mr. John Bostjancic.

The Motion to Dismiss at Dkt. No. 50 (the "First Motion to Dismiss") was filed by Orthofix, SeaSpine, the Legacy Orthofix Officer and Director Defendants, and the SeaSpine-

Orthofix Director Defendants. The Motion to Dismiss at Dkt. No. 51 (the "Second Motion to Dismiss") was filed by the Terminated Executives.

### B. The Merger

Orthofix is a Texas-based spine and orthopedics company. (Dkt. No. 49 at 2.) On October 11, 2022, Orthofix announced that it had entered into an agreement to merge with SeaSpine, a California-based medical technology company. (*Id.*) On January 5, 2023, the merger—with Orthofix as the surviving company—became effective. (*Id.* at 3.) The (soon to be) Terminated Executives came over from SeaSpine to serve as the President and Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Chief Legal Officer ("CLO") of the new Orthofix board. (*Id.* at 2.)

### C. Pre-Merger Johnson Action and Subsequent Activity at SeaSpine

Prior to the merger, SeaSpine was involved in a discrimination class action lawsuit filed in 2017 (the "Johnson Action"), involving a class of 276 current and former female employees who worked for SeaSpine in California from July 1, 2015 to December 31, 2019. (Dkt. No. 49 at 17-19; *see Johnson v. SeaSpine Holdings Corp.*, Case No. 30-2017-00949804-CU-OE-CXC (Cal. Super. Ct. Orange Cnty.).) The court approved a settlement in the Johnson Action on July 26, 2021. (*Id.*) As part of the settlement, SeaSpine was required to pay $919,500.87 in settlement funds. (Dkt. No. 49 at 19.) The settlement also included "targeted programmatic relief under which SeaSpine agreed to hire an outside vendor to review their work departments with an emphasis on high pay gaps." (*Id.*)

The FAC includes allegations that Orthofix "disregard[ed] the mountain of evidence that the Terminated Executive[s] fostered a hostile and discriminatory environment at SeaSpine" after the Johnson Action and leading up to the merger. (*Id.* at 17.) Among Plaintiffs' support for this

3

contention is: a discrimination-based complaint filed post-merger in California state court by Ms. Catherine O'Connor, a former SeaSpine attorney, alleging that Ms. O'Connor's bonus target was below market (*id*. at 20); an anonymous post on Glassdoor.com from September 14, 2022 stating that there was "drinking at all hours of the day at cubicles" and "favoritism when promotions came around," among other anonymous online posts (*id*. at 22); a confidential witness ("CW") who worked at SeaSpine from July 2022 to July 2024 who "witnessed a complaint—this one relating to harassment [of a female employee by a male colleague]—go unaddressed" (*id*. at 40); and text messages between the Terminated Executives making sexist and other offensive comments about employees (*id*. at 25-28, 64-66).

### D. Post-Merger Firing of the Terminated Executives

Roughly six months after the merger, Orthofix's board "received a complaint from then-President of Orthofix Global Spine, Kevin Kenny, detailing multiple workplace issues and inappropriate conduct by the Terminated Executive Defendants." (*Id*. at 74-75.) This complaint prompted the board to "take action and commence an investigation, spending millions of dollars in the process." (*Id*. at 75.) This investigation involved other members of the Orthofix board as well as outside counsel from DLA Piper and Lathan & Watkins. (*Id*.) Around August 17, 2023, the Terminated Executives were required to provide their personal phones to be searched as part of this investigation, which is how the Orthofix board became aware of their inappropriate text messages. (*Id*. at 76.)

On September 12, 2023, Orthofix issued a press release which announced the "unanimous decision by the Board's independent directors to terminate for cause [the Terminated Executives]… and requested that Mr. Valentine resign from the Board" following an internal investigation conducted by outside counsel and overseen by Orthofix's independent directors. (*Id*.

at 77-78.) The Terminated Executives have since sued for defamation to challenge Orthofix's public-facing statements about their termination. (*Id*. at 8.) The day after Orthofix made these announcements, Orthofix's "stock declined $5.62 per share, or over 30%, to close at $13.01 per share on September 13, 2023, on unusually heavy volume, wiping out $206.5 million of market capitalization." (*Id*. at 79.)

### E. The Challenged Statements

Defendants divide the statements Plaintiffs challenge in the FAC into six (6) categories, with the full text of each set out in Exhibit 1 to the First Motion to Dismiss alongside Defendants' objections to each. (*See* Dkt. No. 50-2.) These statement type categories were referenced by all parties at the hearing on the Motions to Dismiss as well. For ease of discussion, the Court adopts these statement type categories as summarized below.

Statement Type 1. The merger prospectus identified thirty-two (32) separate factors that Orthofix's board considered in recommending Orthofix stockholders vote their shares in favor of a merger. (Dkt. No. 50 at 8.) Plaintiffs assert Orthofix's board lied when it stated that the fifteenth factor it considered was "[t]he complementary cultures of Orthofix and SeaSpine, including a strong performance-based culture focused on integrity, collaboration, innovation, diversity and corporate responsibility." (*Id*., citing Dkt. No. 49 at 135.)

Statement Type 2. The merger prospectus included as an appendix the merger agreement between Orthofix and SeaSpine. (Dkt. No. 50 at 8-9.) Plaintiffs challenge representations and warranties about employment matters that SeaSpine made to Orthofix in the merger agreement, including that "[w]ithin the past four (4) years, SeaSpine has not entered into any settlement agreement" pertaining to misconduct allegations. (*Id*. at 9, citing Dkt. No. 49 at 88.) Defendants note that the merger agreement "stated that the representations and warranties were qualified by

5

materiality thresholds and a 'confidential disclosure letter delivered by SeaSpine.'" (Dkt. No. 50 at 9, citing Dkt. No. 50-8 at A-20.)

Statement Type 3. In a November 18, 2022 SEC Form 425 statement, Orthofix proffered that the merged company's executive leadership team was "selected based not only on their individual merit but also with consideration" for the leadership team to include "leaders from both legacy organizations." (Dkt. No. 50 at 9, citing Dkt. No. 49 at 93.)

Statement Type 4. Also on November 18, 2022, a Form 8-K press release statement included a claim that Mr. Bostjancic was a "cultural influence" and "well positioned to help lead us through the successful integration of the two companies, ensuring accountability across all levels of the organization." (Dkt. No. 50 at 9, citing Dkt. No. 49 at 94-95.)

Statement Type 5. Orthofix filed its Form 10-K annual report for 2022 with the SEC on March 6, 2023. (Dkt. No. 50 at 10.) Plaintiffs challenge many statements from the 2022 Form 10-K, such as statements that "[i]t is our fundamental policy to conduct business in accordance with the highest ethical and legal standards. We have a comprehensive compliance and ethics program," and that "[o]ur key human capital objectives in managing our business include attracting, developing, and retaining top talent while integrating diversity, equity, and inclusion principles and practices into our core values." (Dkt. No. 49 at 102-03.) In these statements, Orthofix identified at a high level the "key elements" of its compliance program, such as "investigation and remediation measures," and "disciplinary guidelines to enforce compliance and address violations." (Dkt. No. 50 at 10, citing Dkt. No. 50-10 at 17-18.) Defendants note as well that the 2022 Form 10-K discussion of its compliance program expressly warns that "these [internal] controls may not always be effective" because "[t]here are inherent limitations on the effectiveness of internal controls." (Dkt. No. 50 at 11, citing Dkt. No. 50-10 at 31.)

6

Statement Type 6. In its April 27, 2023 proxy statement filed with the SEC, Orthofix stated that "Corporate codes of conduct [are] enforced at all levels of the Company" to "promote[] honest and ethical conduct." (Dkt. No. 50 at 11, citing Dkt. No. 49 at 107.)

### F.  Plaintiffs' Claims

The FAC includes seven counts, four under the Exchange Act and three under the Securities Act. Counts I and II allege violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Orthofix, the Legacy Orthofix Officer and Director Defendants, the Orthofix Post-Merger Director Defendants, SeaSpine, and the Terminated Executive Defendants. Counts III and IV allege violations of Section 20(a) of the Exchange Act against the Legacy Orthofix Officer and Director Defendants, the Orthofix Post-Merger Director Defendants, and the Terminated Executive Defendants. Count V alleges violations of Section 11 of the Securities Act against Orthofix and the Signer Defendants. Count VI alleges violations of Section 12(a)(2) of the Securities Act against the Securities Act Defendants. Finally, Count VII alleges violations of Section 15 of the Securities Act against the Securities Act Defendants.

### II.    LEGAL AUTHORITY

A complaint will survive a Rule 12(b)(6) motion if, "accepting its factual allegations as true, the complaint plausibly states a claim for relief." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 206 (5th Cir. 2023) (internal citation omitted).

Plaintiffs allege primary violations of Section 10(b) of the Exchange Act, SEC Rule 10b-5, and Sections 11 and 12(a)(2) of the Securities Act. Plaintiffs also allege secondary control person liability claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act. *See* citing *Ak. Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2019) ("[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation").

"To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). A complaint alleging a violation of Section 10(b) must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), requiring that the complaint "state all allegations of fraud with particularity." Fed. R. Civ. P. 9(b). It must also meet the heighted pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), under which plaintiffs must allege with particularity (1) why each one of defendants' representations or omissions was "misleading," and (2) those facts giving rise to a "strong inference" that the defendant acted with scienter. *See Six Flags*, 58 F.4th at 206-07 (internal citations omitted).

In contrast, Sections 11 and 12(a)(2) of the Securities Act require only a material misstatement, made in a registration statement or a prospectus, respectively. 15 U.S.C. §§ 77k(a), 77/(a)(2). Where a prospectus is included as part of the registration statement, a statement in a prospectus can be subject to both Sections 11 and 12(a)(2).

Since falsity and materiality are analyzed the same way under Section 10(b) and Sections 11 and 12(a)(2), the actionability of statements which Plaintiffs challenge under both the Exchange Act and the Securities Act can be addressed by the Court together as to whether they are material misstatements or omissions. *See, e.g., Police & Fire Ret. Sys. v. Plains All Am. Pipeline, LP*, 777 Fed. Appx. 726, 733 (5th Cir. 2019) ("[t]he analysis for falsity does not differ from the similar analysis under the Exchange Act").

## III.    ANALYSIS

In the Motions to Dismiss, Defendants seek to dismiss the entirety of the FAC. First, they assert that Plaintiffs have failed to plead a material misrepresentation or omission as required by Section 10(b) of the Exchange Act, SEC Rule 10b-5, and Sections 11 and 12(a)(2) of the Securities Act. Next, they assert that Plaintiffs have failed to plead both loss causation and a strong inference of scienter as required by Section 10(b) and Rule 10b-5. Finally, they assert that Plaintiffs have failed to establish control person liability under both Section 20(a) of the Exchange Act and Section 15 of the Securities Act. The Court now takes up each of these arguments in turn.

### A.  Material Misrepresentation or Omission

A statement is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213 (5th Cir. 2004) (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (2004)). In assessing whether a material misrepresentation has been made, the Court must read each statement "in its full context, … in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council*, 575 U.S. 175, 190 (2015). To plead a misrepresentation under Rule 9(b)'s requirements, "plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 256 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

Defendants separate the statement types into two categories for their analysis: they assert that Statement Types 1, 3, 4, 5, and 6 are both immaterial as a matter of law and are not false or

9

misleading, and that Statement Type 2 is not actionable because of the representations and warranties in the merger agreement. (Dkt. No. 50 at 14-20.[1])

### i.        Statement Types 1, 3, 4, 5, and 6 are Immaterial as a Matter of Law

The Court finds that Statement Types 1, 3, 4, 5, and 6 are immaterial as a matter of law. While materiality can present a "mixed question of law and fact," *see Kapps*, 379 F.3d at 216, the Fifth Circuit makes clear that a company's "generalized positive characterization[]" are "not actionable under the securities laws." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003).

In *Emp.'s Ret. Sys. v. Whole Foods Mkt., Inc.*, the Fifth Circuit held that "comments about Whole Foods' commitments to transparency and quality—even if false—are immaterial," because these "generalized statements about Whole Foods' transparency, quality, and responsibility are the sort of puffery that a reasonable investor would not rely on." 905 F.3d 892, 901-02 (5th Cir. 2018). Similarly, here, Statement Types 1, 3, 4, 5, and 6 are the sort of generalized positive statements that reasonable investors would not rely on—statements from Orthofix itself about "[t]he complementary cultures of Orthofix and SeaSpine," the "individual merit" of those selected to carry over onto the post-merger board, and the company's commitments to "integrating diversity, equity and inclusion principles" and "promoting honest and ethical conduct" (*see* Section I.E, *supra*) are immaterial corporate puffery.

Tellingly, Plaintiffs do not respond to Defendants' reliance on *Whole Foods*—the case is cited only a once in their responsive brief, in a footnote, responding to entirely different arguments. (*See* Dkt. No. 58 at 43 n.36.) In their supplemental briefing on the matter, Plaintiffs argue only that

---

[1] The Second Motion to Dismiss makes some additional arguments, which are addressed where relevant below. The Court generally considers the arguments in the First Motion to Dismiss where the Motions to Dismiss overlap, given both the order of filing and that Defendants elected to argue the Motions to Dismiss in that manner at the hearing.

the pre- and post-merger statements at issue here "were sufficiently specific considering the context in which they were made" to distinguish this case from *Whole Foods*. (Dkt. No. 80 at 3 (internal citation omitted).)

The Court finds this distinction unavailing on these facts. As in *Whole Foods*, Statement Types 1, 3, 4, 5, and 6 are immaterial as a matter of law and thus cannot form the basis of Plaintiffs' material misstatements for their Section 10(b), SEC Rule 10b-5, Section 11, or Section 12(a)(2) claims.

### ii.    Plaintiffs Have Successfully Pled Statement Type 2 is a Material Misrepresentation

The Court finds that Plaintiffs have successfully pled that Statement Type 2 is a material misrepresentation which can support its Section 10(b), SEC Rule 10b-5, Section 11, or Section 12(a)(2) claims at this stage of the litigation.

Orthofix, SeaSpine, and certain Individual Defendants assert primarily that Statement Type 2 is not actionable because "the merger prospectus expressly warned that Plaintiffs 'should not rely on the representations and warranties [in the merger agreement] or any descriptions thereof as characterizations of the actual state of facts or the condition of the parties thereto,'" and reasonable shareholders would not read this disclaimer and then rely on the representations and warranties in the merger agreement. (Dkt. No. 50 at 21, citing Dkt. No. 50-8 at 117; Dkt. No. 50-4; *Jarslawicz v. M&T Bank Corp.*, 2017 WL 1197716, at *5 (D. Del. Mar. 30, 2017).)

The Terminated Executives further assert that "[a] misrepresentation cannot be imputed from the Johnson Action settlement," because "[c]ourts have repeatedly rejected the proposition that the existence of a past settlement—including one related to employment discrimination—can be used to infer wrongdoing or material misstatements." (Dkt. No. 51 at 15, citing Fed. R. Evid. 408.)

11

Plaintiffs respond that Defendants read *Jaroslawicz* far too broadly in attempting to assert that non-reliance disclaimers automatically render merger agreement representations not actionable as a matter of law, and that such a holding is counter to both the holdings of other circuits and the Fifth Circuit's "longstanding rejection of the notion that cautionary language can serve as per se bars to liability." (Dkt. No. 58 at 15-19, citing *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008); *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020); *Rubinstein v. Collins*, 20 F.3d 160 (5th Cir. 1994).) Plaintiffs assert that the Court should consider the non-reliance disclaimer and the rest of Statement Type 2 under all circumstances to determine whether a reasonable investor may consider these statements significant in deciding whether to invest. (Dkt. No. 58 at 18.) At the hearing, Plaintiffs further pointed to language in the prospectus "encourage[ing]" shareholders "to read the merger agreement carefully and in its entirety." (*See* Dkt. No. 58-4 at 57.)

Plaintiffs additionally respond that Rule 408 is not a bar to their using the Johnson Action to support allegations that a disclosure was materially false or misleading, as Rule 408 only states that the acceptance of a settlement of a claim is typically inadmissible to prove liability for *that* claim. The Court finds Plaintiffs' appraisal of Rule 408 is correct. Despite the Terminated Executives' reliance upon it, Rule 408 is inapplicable and does not bar Plaintiffs' reliance on the Johnson Action to demonstrate a material misstatement in this context.

The Court further finds that Statement Type 2 is not inactionable as a matter of law, as the non-reliance disclaimer does not create a per se bar to liability. When assessing the statement "in its full context, … in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information," *see Omnicare*, 575 U.S. at 190, the Court finds that reasonable investors could certainly have found the representation that "[w]ithin the past four (4) years, SeaSpine has

12

not entered into any settlement agreement" pertaining to misconduct allegations significant to their investment decisions, even in light of the disclaimers made by Orthofix and SeaSpine. While a reasonable jury could certainly find that such a disclaimer does not render Statement Type 2 to be material, the Court determines that on these facts a reasonable jury could also find that Statement Type 2 would have been material to investors. This issue is therefore inappropriate for resolution at the motion to dismiss stage.

Additionally, this statement is clearly a misrepresentation, as it was made less than four years from the 2021 settlement of the Johnson Action.[2] Accordingly, Plaintiffs have adequately pled that Statement Type 2 is a material misrepresentation which can support its Section 10(b), SEC Rule 10b-5, Section 11, or Section 12(a)(2) claims at this stage of the litigation.

## B. Loss Causation

To plead loss causation, a plaintiff must allege "a facially 'plausible' causal relationship between the [material misrepresentation] and plaintiff's economic loss… followed by the leaking out of a relevant or related truth about the fraud that caused a significant part of the depreciation of the stock and plaintiff's economic loss." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009.) In other words, the pleadings must plausibly allege that the corrective disclosure itself was what caused the negative market reaction. *See, e.g., Catogas v. Cyberonics, Inc.*, 292 Fed. Appx. 311, 314 (5th Cir. 2008). "[I]t is insufficient to simply allege that the misrepresentation 'touches upon' a later economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).

---

[2] Defendants assert in supplemental briefing that since "[t]he first sentence of the [representations and warranties] states that a separate side letter qualifies everything that follows… investors readings the [representations and warranties] knew that [they] did not disclose all facts relating to employment matters." (Dkt. No. 82 at 3.) They thus argue that Statement Type 2 was not a misstatement, because the merger documents alerted Plaintiffs to the fact that SeaSpine was not disclosing certain information. (*Id*.) The Court finds this argument unavailing. Despite any qualification that the information may not be entirely complete, to say that "[w]ithin the past four (4) years, SeaSpine has not entered into any settlement agreement" pertaining to allegations of employment discrimination was clearly a misstatement in light of the Johnson Action settlement in 2021.

Regarding loss causation, Plaintiffs state in the FAC that "[i]n response to the September 12, 2023 disclosures, Orthofix shares declined $5.62 per share, or over 30%, to close at $13.01 per share on September 13, 2023, on unusually heavy volume, wiping out $206.5 million of market capitalization." (Dkt. No. 49 at 114.) Plaintiffs go on to state that "[a]nalysts were shocked by the news about the termination, viewing the sudden departure of the Terminated Executive Defendants as the cause for the price drop and expecting that Orthofix shares would feel the impact for some time." (*Id.*) Plaintiffs then provide input from analysts, all of whom focus on the relationship between "the stock decline [and] the sudden announcement," and concerns about the future, like "the lack of permanent leadership… and the longer-term potential business impacts from the lost leadership." (*Id.* at 115.) Plaintiffs finally state that "Orthofix's September 12, 2023 and September 14, 2023 disclosures corrected Defendants' prior materially misleading statements and omissions concerning the leadership team and culture of ethics and compliance at the Company," and that such a correction is what caused the decline in stock price. (*Id.* at 117.)

However, the Court does not find that Plaintiffs' claim that the stock price declined due to Orthofix's corrective disclosures is supported by its allegations. Both Plaintiffs' own statements and the quoted language it provides from analysts clearly assert that the sudden departure of the Terminated Executives, who were established professionals in the field, and forward-looking concerns about the future of the company without the Terminated Executives at the helm are what caused the drop in stock price. Further, the only disclosures which occurred on September 12 and September 14, 2023 pertained to the firing of the Terminated Executives "for cause" as a result of the board "determin[ing] that each of these executives engaged in repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with

14

the Company's values and culture." (*Id*. at 83-84.) These disclosures therefore do not even directly touch upon the material misstatement in the merger agreement regarding the Johnson Action.

Plaintiff insists that under *Lormand*, they are "only required to plead a plausible inference of loss causation that is equally or more plausible than competing inferences." (Dkt. No. 80 at 4, citing 565 F.3d at 266-67.) Given that it is their own representations and citations to analyst reports in the FAC that lead to the overwhelming inference that the loss was caused by the sudden departure of the well-established Terminated Executives, rather than the corrective disclosures, Plaintiffs have not met this standard either.

Plaintiffs "would have suffered the exact same harm" regardless of whether it had made these disclosures regarding the Terminated Executives, and "[n]othing in the plaintiffs' complaint suggests otherwise." *See Whole Foods*, 905 F.3d at 905. Accordingly, Plaintiffs have not pled loss causation as required for its Section 10(b) and SEC Rule 10b-5 claims.

## C. Strong Inference of Scienter

Since the Court finds that Plaintiffs have failed to plead loss causation, no analysis of scienter is necessary. Any determination of whether Plaintiffs have pled a strong inference of scienter, as required by Section 10(b), is irrelevant given that the Court has already determined the loss causation requirement of Section 10(b) is not met.[3]

---

[3] In their briefing, the Terminated Executives assert that the scienter requirement should also apply to the Section 11 and 12(a)(2) claims because "Rule 9(b)'s heightened requirements apply when such claims 'are grounded in fraud rather than negligence.'" (Dkt. No. 51 at 13, citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994).) Plaintiffs respond that they "specifically pled their Securities Act claims separately, disavowed fraud allegations, and expressly alleged strict liability and negligence for those claims," and further, that the application of Rule 9(b)'s heightened pleading standard still does not and cannot alter the statutory elements of Securities Act claims, which do not require pleading scienter. (Dkt. No. 58 at 43-44 (internal citations omitted).) The Court finds that Plaintiffs' position is correct regarding the imposition of a scienter requirement—while it is true that "[i]f the claim is based on the same underlying facts and allegations as a securities fraud claim under the Exchange Act, then the pleading standard is the pleading standard contained in Rule 9(b)," this heightened requirement is only imposed such that "the Securities Act claims must be pled with particularity." *All Am. Pipeline*, 777 F. App'x at 733 (5th Cir. 2019). Additionally, Plaintiffs have indeed explicitly disavowed a fraud theory for their Securities Act claims—the FAC expressly states "[f]or the purposes of this Section [11/12(a)] claim, the Securities Act Plaintiffs do not allege that any Securities Act Defendant

15

### D. Control Person Liability

Defendants' sole argument regarding the control person liability claims is that "[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation." (Dkt. No. 50 at 30, citing *Flotek*, 915 F.3d at 986; Dkt. No. 51 at 29, citing the same.) Plaintiffs agree that they have "adequately allege[d] control liability as to all Defendants for any primary claim that the Court finds to be adequately alleged." (Dkt. No. 58 at 45.)

Since the Court finds that Plaintiffs have not adequately alleged violation of Section 10(b) of the Exchange Act, the related claims for control person liability under Section 20(a) of the Exchange Act must also fail. By the same token, since the Court finds that Plaintiffs have adequately alleged violations of Sections 11 and 12(a)(2) of Securities Act, the related claims for control person liability under Section 15 of the Securities Act survive as well.

### E. Leave to Amend

Plaintiffs request leave to amend if the Court finds that the FAC fails to state a claim in a footnote on the final page of their briefing. (*See* Dkt. No. 58 at 45 n.40.) The Fifth Circuit examines five considerations to determine whether to grant a party leave to amend a complaint: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Regarding the determination that Statement Types 1, 3, 4, 5, and 6 are immaterial as a matter of law, the Court finds that granting leave to amend would be futile. Any edits to the FAC would not change the content of these statements themselves, which the Court has determined are inactionable corporate puffery.

---

acted with scienter or fraudulent intent, which are not elements of a claim under Section [11/12(a)]." (Dkt. No. 49 at 148, 149.) Accordingly, the Court does not consider scienter with respect to the Section 11 and 12(a)(2) claims.

16

However, regarding the determination that Plaintiffs have failed to plead loss causation for the corrective disclosure, the Court finds that justice requires providing leave to amend these contentions in the FAC. *See* Fed. R. Civ. P. 15. The Court has no reason to suspect that such amendments will cause an undue delay or prejudice, that granting leave to amend will be futile, or that Plaintiffs have acted in bad faith. Also, there has not yet been a repeated failure to cure any deficiency.

Accordingly, leave to amend is **DENIED** with respect to Plaintiffs' pleadings on material misstatements, and **GRANTED** with respect to the pleadings on loss causation.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motions to Dismiss (Dkt. Nos. 50, 51) are **GRANTED-IN-PART** and **DENIED-IN-PART**.

Since the Court finds that Plaintiffs have not adequately pled loss causation, Counts I and II alleging violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 are **DISMISSED WITHOUT PREJUDICE**. Additionally, Counts III and IV alleging violations of Section 20(a) of the Exchange Act are **DISMISSED WITHOUT PREJUDICE** as they rise or fall with the 10(b) and 10b-5 claims. The Motions to Dismiss are **GRANTED** with respect to these claims, but Plaintiffs have leave to amend its FAC to address the deficiencies the Court has identified regarding loss causation. It is **ORDERED** that Plaintiffs file any such amendments they wish to make regarding its allegations of loss causation in a Second Amended Complaint within thirty (30) days of this Order.

Counts V, VI, and VII allege violations of Sections 11, 12(a)(2), and 15 of the Securities Act. The Motions to Dismiss are **DENIED** with respect to these claims, given that the Court finds that Plaintiffs have successfully pled that Statement Type 2 was a material misrepresentation.

So ORDERED and SIGNED this 9th day of March, 2026.

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE